## FAIRMOUNT CEMETERY ASS'N v. HELVERING.

### No. 6354.

United States Court of Appeals for the District of Columbia.

Argued April 4, 1935.

Decided June 29, 1935.

Paul E. Shorb and M. P. Wormhoudt, both of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Robert H. Jackson, Nathan Gammon, and H. P. Locke, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner is a Colorado corporation engaged in operating Fairmount Cemetery and Mausoleum in the immediate vicinity of Denver, Colo. It was incorporated in 1890, and in the same year acquired its present site comprising some 560 acres of land, which it caused to be plotted and made available for cemetery purposes. Prior to March 1, 1913, the corporation had expended in excess of $130,000 on improvements—the greater part on the por-

tion of land then immediately available for and dedicated to burial purposes.

The appeal involves the taxable years 1927 to 1930, inclusive. The applicable statutes are section 204 of the Revenue Act of 1926 (26 USCA § 935), and section 113 of the Revenue Act of 1928 (26 US CA § 2113). They are substantially the same and provide that the basis for determining gain or loss from the sale of property shall be the fair market value of the property as of March 1, 1913.

Thirty-seven cemetery blocks of unequal size, located in the vicinity of the main entrance to the cemetery, were fully improved prior to March 1, 1913. The remainder of the land was either partially improved or was not improved at all. The method of selling was by the square foot, and the average sale price between January 1, 1911, and February 28, 1913, was approximately 87 cents per square foot. Eight thousand families had then acquired plots and many others single lots. The Commissioner fixed the 1913 value of the improved lots (then unsold) at 80 cents per square foot, and the 1913 value of the lots in the partially improved blocks at 40 cents per square foot, and the unimproved at 3.968 cents per square foot. The Board sustained the Commissioner's figures. Petitioner contends for a valuation running from a low of 40 cents to a high of $1.93.

█ We think, after carefully reading the record, that the value placed by the Commissioner on the improved and partially improved lots should be upheld. While it is but an estimate, in all the circumstances it seems to us not unfair. On the other hand, the overwhelming weight of evidence impels, as we think, a higher valuation on the unimproved blocks. Witnesses introduced by the Commissioner testified only to the valuation of farm lands located near the cemetery—but there is an obvious, indeed an admitted, lack of similarity in conditions. There is nothing in that evidence upon which to base valuation of the land in question. Lacking the same elements of value, the comparison is pointless. The only evidence offered which may be said even partially to support the Commissioner's determination of value as to the unimproved land is the evidence of the sale of 15 acres by the cemetery company to a Hebrew Cemetery Association in 1911 at $1,000 per acre. But even that is a poor guide, for the property sold

was at the extreme end of the cemetery site. It was sold in bulk and with a contract that the seller would have certain rights and privileges in relation to its superintendence, the erection of headstones, the interment of bodies, furnishing of flowers, and other like matters, so that both by reason of its distance and these uncertain elements of value, it is not a safe criterion for determining the value of the entire balance—certainly not that portion lying close to the improved section of the cemetery, which is the question we are now concerned with. The record shows millions of dollars have been spent in markers and memorials on the grave sites which have been sold and utilized, and that driveways, parkways, and a comprehensive scheme of beautification have greatly enhanced its value. But, more than that, the Commissioner's own figures unmistakably show the error in the valuation adopted. For instance, the Commissioner allowed petitioner 80 cents per square foot 1913 valuation on the improved lands. In the taxable years in question, lots on these lands were sold at an average price of $1.40 per square foot or not quite double the 1913 valuation, whereas on the unimproved lots the Commissioner placed a valuation of a little under 4 cents and, yet, for the taxable years in question these lots were sold at an average price in excess of $1.25, or thirty-two times their 1913 value. This disparity can be explained on no other theory than that the basic figure is too little.

A glance at the map in the record confirms this view. For instance, blocks 55, 12, 33, and 20 are given by the Commissioner a value of 80 cents a square foot, while directly across the driveways precisely the same character of land in blocks 48, 53, 54, 46, 31, and 34 (unimproved as of March 1, 1913) is given a value of 3.968 cents; and yet admittedly the average cost of making the improvements to make these blocks equal in all respects to the others is approximately only 10 cents per square foot. This illustration is characteristic of the whole.

█ We think the Board attached too great importance to the presumption in favor of the Commissioner's finding. That presumption is the sheet anchor of the government in all doubtful cases, and the courts, including this court, have indulged it to the limit, but it must yield to uncontradicted evidence, and here there is such

evidence. For here there is not only evidence of witnesses contradictory of the Commissioner's valuation, but more persuasive still—definite facts which show unmistakably that the Commissioner's figure on the unimproved land was mere guesswork.

■ In 1913, with the rapid growth of Denver and the admonition of the psalmist, that man's life is but three score years and ten, it was reasonably certain that all of the lots in the blocks sold in the years 1927 to 1930 (those involved in this petition) might be expected to be marketable in a few years. Therefore to apply a formula based upon an expectancy of sale 200 years hence, as the Board suggests, was manifestly misleading. While it may be quite true that the ordinary test to ascertain value as applied to building lots in a growing community is not altogether satisfactory when applied to cemetery lots—because of the inexorable rule of supply and demand—it cannot be altogether discarded; and so, while it is reasonable and fair to give consideration to the time element—the period of holding before a market can be had—this is but one element in the computation and here it should be applied, not as the Board applied it—to the whole acreage—but to the particular lots involved. We have a starting point in the value of the land sold the Hebrew Association. Cut up into lots, with streets, etc., the price paid about equals 4 cents a square foot. With that as a basic figure for the lots immediately adjoining, the price or value of the others as they approach or bound on the developed portion can be estimated with fairness to the landowner and the government. Certainly this is true of those which immediately lie around the limited and developed area, and that is our present problem. If identically similar lots are accepted by the Commissioner as of 80 cents and 40 cents value (1913) improved or partially improved, then those described as unimproved, but in the same locality and sharing the benefits of the central improvement—and subject to be made equally as valuable by the expenditure of 10 cents per square foot—cannot fairly be said to be worth less than a twentieth of the one or a tenth of the other. There is a middle ground fair to all interests, which can be found by applying petitioner's evidence of value—weighed in the scale of availability for use—of which there is enough in the present record.

■ We have never hesitated to apply the well-settled rule that if the findings of the Board are supported by substantial evidence they will not be disturbed, but the rule has no place here for the reason that there is, as we have pointed out, no satisfactory evidence to support the Commissioner's valuation of the unimproved land, and there is, on the contrary, uncontradicted evidence to show much greater value. It will serve no useful purpose to set out this evidence at length. It is in the record and, by applying it on the basis we have announced, the Board will have no difficulty in correcting its error.

Reversed in part, and remanded to the Board of Tax Appeals.