**FAIRMOUNT CEMETERY ASS'N v. HEL-VERING, Commissioner of Internal Revenue.**

No. 6883.

United States Court of Appeals for the District of Columbia.

Argued. June 8, 1937.

Decided July 12, 1937.

Paul E. Shorb and M. P. Wormhoudt, both of Washington, D. C., for petitioner.

James W. Morris and Robert H. Jackson, Asst. Attys. Gen., and Sewall Key, Herman Oliphant, William E. Davis, Norman D. Keller, and Howard P. Locke, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and GRONER and STEPHENS, Associate Justices.

PER CURIAM.

On a former petition for review we reversed the decision of the Board and remanded this case for further proceedings. 65 App.D.C. 38, 79 F.(2d) 163.

The present petition asserts that the Board in its decision on rehearing failed to comply with this court's mandate.

The controversy involves the March 1, 1913, value of twenty unimproved blocks of cemetery lots belonging to petitioner, being from one-half acre to an acre in size. The taxable years are 1927 to 1930, inclusive.

The Commissioner first fixed a value of 80 cents a square foot for improved blocks, 40 cents for partly improved blocks, and 3.968 cents for the adjacent but unimproved blocks. The Board on the hearing sustained the Commissioner's valuation. We approved the ruling of the Board with relation to the improved and partially improved blocks, but remanded for a revaluation of the unimproved blocks. We said then at page 39 of 65 App.D.C., at page 164 of 79 F.(2d):

"We think, after carefully reading the record, that the value placed by the Commissioner on the improved and partially improved lots should be upheld. While it is but an estimate, in all the circumstances it seems to us not unfair. On the other hand, the overwhelming weight of evidence impels, as we think, a higher valuation on the unimproved blocks. Witnesses introduced by the Commissioner testified only to the valuation of farm lands located near the cemetery—but there is an obvious, indeed an admitted, lack of similarity in conditions. There is nothing in that evidence upon which to base valuation of the land in question. Lacking the same elements of value, the comparison is pointless. The only evi-

dence offered which may be said even partially to support the Commissioner's determination of value as to the unimproved land is the evidence of the sale of 15 acres by the cemetery company to a Hebrew Cemetery Association in 1911 at $1,000 per acre. But even that is a poor guide, for the property sold was at the extreme end of the cemetery site. It was sold in bulk and with a contract that the seller would have certain rights and privileges in relation to its superintendence, the erection of headstones, the interment of bodies, furnishing of flowers, and other like matters, so that both by reason of its distance and these uncertain elements of value, it is not a safe criterion for determining the value of the entire balance— certainly not that portion lying close to the improved section of the cemetery, which is the question we are now concerned with. The record shows millions of dollars have been spent in markers and memorials on the grave sites which have been sold and utilized, and that driveways, parkways, and a comprehensive scheme of beautification have greatly enhanced its value. But, more than that, the Commissioner's own figures unmistakably show the error in the valuation adopted. For instance, the Commissioner allowed petitioner 80 cents per square foot 1913 valuation on the improved lands. In the taxable years in question, lots on these lands were sold at an average price of $1.40 per square foot or not quite double the 1913 valuation, whereas on the unimproved lots the Commissioner placed a valuation of a little under 4 cents and, yet, for the taxable years in question these lots were sold at an average price in excess of $1.25, or thirty-two times their 1913 value. This disparity can be explained on no other theory than that the basic figure is too little.

"A glance at the map in the record confirms this view. For instance, blocks 55, 12, 33, and 20 are given by the Commissioner a value of 80 cents a square foot, while directly across the driveways precisely the same character of land in blocks 48, 53, 54, 46, 31, and 34 (unimproved as of March 1, 1913) is given a value of 3.968 cents; and yet admittedly the average cost of making the improvements to make these blocks equal in all respects to the others is approximately only 10 cents per square foot. This illustration is characteristic of the whole."

The case was considered by the Board a second time—but on the original record— with the result that the Board divided the unimproved blocks in controversy into four parcels valuing one parcel at 15 cents a square foot, another at 9 cents, another at 6 cents, and left the remaining parcel at the original figure of 3.968 cents a square foot.

We have again carefully reviewed the evidence in the record, and we are impelled to the same conclusion we announced in our former opinion, namely that the values fixed by the Board are supported, if supported at all, only by the presumption in favor of the Commissioner's determination; and in our former opinion we said that there was in the record no evidence to support the Commissioner's valuation but, on the contrary, uncontradicted evidence to show much greater value.

The cemetery was established in 1890, and the total area comprised 560 acres of land. It is located on the outskirts of Denver. Between 1890 and 1913 about one-fifth the total area was improved, landscaped, and made suitable for cemetery purposes. Among the improvements prior to 1913 were a chapel, a gate lodge, a greenhouse, water mains, office and waiting rooms, and the other appurtenances of a modern cemetery. In that period petitioner, in addition to single lot sales, sold plots to 8,000 families, and improvements to the extent of several million dollars were made by the purchasers on these plots. In 1890 the population of Denver was 85,000. In 1913 it was in the neighborhood of 225,000. The so-called unimproved plots are all, except block 90, located immediately adjacent to the plots which had been improved or partially improved in 1913, and embrace together with the improved land only about one-quarter of the whole area. The evidence is that the cost of improving these plots so that they would be in all respects like the improved plots was 10 cents a square foot. Examination of the map showing the subdivision of a part of the property into plots or blocks, considered in conjunction with the uncontradicted evidence of the witnesses and the correct principles governing the ascertainment of value, unmistakably shows the unreasonableness of the present valuation of the Board. For instance, blocks 45, 46, 47, and 48 located within the circle of the original improvement but not improved in 1913—and yet susceptible at small cost of improvement in all respects like the adjoining blocks—are valued by the Board at 9 cents whereas blocks 7, 12, 55, and 56, which surround on two sides the four mentioned blocks, were originally valued by the Commissioner, by the Board, and by us, at 80 cents. This dis-

parity, without a single fact to justify it, is not and very obviously cannot be explained.

Precisely the same situation obtains as to blocks 72, 76, 80, 85, and 86. All abut the improved blocks of 1913, and as to all the cost of making them the same was—in 1913 —10 cents a square foot. Notwithstanding this, the Board without the support of any evidence on which to fix this valuation, put them at 6 cents a square foot. In or before 1929 these blocks had been improved and were being sold at an average price of about $1.50 a square foot.

Enough has been said to show that what we said in our former opinion must be repeated here, viz., that there is no evidence to sustain the Board's finding of value but, on the contrary, uncontradicted evidence to show much greater value.

The average sales price of the improved blocks in the two years preceding 1913 was 87 cents a square foot, and the Supreme Court in a recent case[1] has approved that basis as a reasonable test of fair market value. Petitioner's opinion evidence of fair market value of the unimproved blocks as of 1913, given by competent and expert witnesses, averaged in excess of 75 cents a square foot. The evidence to the contrary related only to valuation of nearby farm lands which, as we said in our former opinion, is wholly without pertinence. The sales price in and prior to 1929 of the 1913 unimproved plots is only 10 per cent. less than the sales price of plots or lots in the 1913 improved and partly improved blocks. If we confine the calculation on this basis to the 1913 value of the *partly* improved blocks alone, we should have a 1913 value of the unimproved blocks of approximately 35 cents a square foot. And if we go still further and deduct another 10 per cent. as discount for years required to realize the selling price—a principle which the Supreme Court in the Elmhurst Case repudiated,—we should still have a valuation of from 25 cents to 30 cents a square foot. For all these reasons we have a situation in which it is apparent the difference in value between 80 cents or 40 cents on the one hand and an average of about 9 cents on the other is without proper justification.

Petitioner asks that we find a definite March 1, 1913, value, but we are loathe to impinge on the fact-finding jurisdiction of the Board, and this even though the deter-

mination of value may be said to be a mixed question of law and fact. We much prefer to think that the error the Board has made grows wholly and entirely out of a misunderstanding of our former opinion for which, doubtless, its lack of clarity is responsible; and we think that what we have now said will correct this misunderstanding and result in a valuation reasonable and fair to petitioner in this case. Less than that the government certainly would not wish.

In this view, and because we think the taxpayer's evidence shows that the Board's decision is wholly unsupported by the evidence and was reached by applying an incorrect principle of law, it is our duty to remand the case for further proceedings. For, as the Supreme Court said in Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623, it may not reasonably be held that the taxpayer is bound to pay a tax that confessedly—or, as we think here, obviously—it does not owe.

Reversed and remanded to the Board, with instructions to reconsider the evidence in the light of this opinion and fix a new base valuation upon the land in controversy.

---

[1] Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491, decided February 1, 1937.