**MEADOW LAND & IMPROVEMENT CO.
v. COMMISSIONER OF INTERNAL
REVENUE.**

No. 7690.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1941.

Decided Nov. 17, 1941.

Samuel J. Gottesfeld, of Philadelphia, Pa., for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen., for respondent.

Before MARIS, JONES, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

This petition to review a decision of the Board of Tax Appeals involves two points. The first is the method of determination of a fair market value as of March 1, 1913. The second is the method by which this value is to be amortized in respect to the taxable years in question which are 1932 to 1935 inclusive. Harleigh Cemetery Association purchased land from the seller for cemetery purposes in 1885 and 1895. In 1902 Meadow Land and Improvement Company, petitioner in this case, acquired from the seller a contract concerning this property. By the terms of the agreement Meadow Land became entitled to one-half

of the sales price of the burial lots as they were sold, and Harleigh was bound to expend the remainder of the purchase price for the maintenance and improvement of the lots, after paying operating expenses. This variation in fact makes a distinction, though not a fundamental difference, between this case and the other cemetery valuation cases of which a fair sized number is to be found in the books.[1]

The basic figure in the determination of the taxpayer's income and excess profits taxes for the taxable years in question was the fair market value on March 1, 1913 of the contract which Meadow Land had acquired from the original seller.[2] The method adopted by the taxpayer was simple, understandable and direct. On March 1, 1913 there were available for sale 2,106,141 square feet of cemetery land. At that time the average selling price per square foot was 88 cents. Under the terms of the contract Meadow Land was entitled to one-half this amount. Multiplying the number of square feet of land by 44 cents, the March 1, 1913 value of $926,702.04 results. To compute the taxable income in any given year is a simple matter of deducting 44 cents from half the average per square foot selling price for that year and multiplying the remainder by the number of square feet sold.[3]

■ Not only does the taxpayer offer a method of fixing the value which can be followed by an application of simple arithmetic; he urges in addition that the question of value is one of law. As a legal question, he says, the court may follow its own judgment and is not bound by the substantial evidence rule with regard to the findings of fact of the Board of Tax Appeals. We do not see eye to eye with the taxpayer on this argument. It is obviously true that the determination of the question of value calls for a judgment from observed or stated facts, comparable perhaps to the conclusion of negligence. It is possible, also, that courts may declare that value is conclusively established by certain definite facts just as certain proved facts establish negligence. But aside from such crystallization the conclusion as to value is a fact conclusion. The elements which may be considered in determining value are subject to judicial approval and the cases cited on behalf of the taxpayer say no more than this.[4]

[1] The taxpayer relies on Elmhurst Cemetery Co. v. Commissioner of Internal Revenue, 1937, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491; Fairmount Cemetery Ass'n v. Helvering, 1935, 65 App. D.C. 38, 79 F.2d 163; West View Cemetery Ass'n v. Commissioner of Internal Revenue, 5 Cir., 1938, 95 F.2d 714. To the contrary and of particular merit in disposing of contentions similar to those advanced here is Montrose Cemetery Co. v. Commissioner of Internal Revenue, 7 Cir., 1939, 105 F.2d 238, affirmed per curiam, 1940, 309 U.S. 622, 60 S.Ct. 511, 84 L.Ed. 985. Other cases involving the valuation of cemetery land and adopting a method of calculation similar to that employed by the government here are Oak Woods Cemetery Ass'n v. Commissioner of Internal Revenue, 7 Cir., 1940, 111 F.2d 863; Mount Hope Cemetery Ass'n v. Commissioner of Internal Revenue, 1938, 37 B.T.A. 671, petition for review dismissed, 7 Cir., July 2, 1940; Abbey Land & Improvement Co. v. Commissioner of Internal Revenue, C.C.H. Dec. 11, 070-C, decided April 17, 1940.

[2] Sec. 113(a) (13) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 517, [substantially similar to § 113(a) (14), 26 U.S.C.A. Int.Rev.Code] provides: "In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection [i. e. cost], adjusted as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis [for determining gain] shall be such fair market value." Section 113(b) (1) (B) then limits the adjustment "to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws". Section 23(k) of the 1932 act, 26 U.S.C.A. Int.Rev.Acts, page 491 [23(l) in 1934, 26 U.S.C.A. Int.Rev.Acts, page 673] provides for "A reasonable allowance". 26 U.S.C.A. Int.Rev.Code, § 23(l). The basis so determined is designated in § 114 (a) as the basis also upon which exhaustion shall be allowed.

[3] This method of computation was employed by the taxpayer in making its income tax return for 1924–1931 without objection.

[4] In Powers v. Commissioner of Internal Revenue, 1941, 312 U.S. 259, 260, 61 S.Ct. 509, 510, 85 L.Ed. 817, the Supreme Court said, "the question of what criterion should be employed for determining the 'value' * * * is a question of law". The other cases cited by the petitioner, Helvering v. Tex-Penn Oil Co., 1937, 300 U.S. 481, 57 S.Ct. 569, 81 L. Ed. 755; Bogardus v. Commissioner of Internal Revenue, 1937, 302 U.S. 34,

■ The Commissioner urged, and the Board of Tax Appeals accepted, a much more complicated method of determining the March 1, 1913 value than that presented by the taxpayer.[5] This was correct. It must be borne in mind that the question here is not that of the value of a piece of this land to a purchaser or even a group of purchasers seeking property for burial lots. It is the valuation of an entire contract concerning the division of proceeds from the sale of a tract of land. The use of the land is limited; it has been dedicated to cemetery purposes. The demand for cemetery lots is necessarily limited to those who seek land for burial purposes. The trend of population in the community, the development of its growth in location of industry, commercial property, residence purposes, etc., convenience of the cemetery property to transportation facilities, all these and other factors will determine both the rate of sale of cemetery lots and the price which they may be expected to bring. The selling price of lots in a given year, while relevant as one of the considerations, is certainly not the only item to be considered in determining the value of the whole cemetery property as of March 1,

1913. And determination of the entire value was the Board's proper function. The unit to be valued is not the lots sold in any particular year; it is the entire contract.

The Commissioner estimated the total prospective earnings under the contract by multiplying the number of square feet of cemetery land available for sale on March 1, 1913 by the average per square foot selling price that prevailed during the years 1913 to 1935. He divided the result by two and subtracted the taxpayers' total expenses estimated over an expectable life period of 80 years. To the difference so found he applied what is known as Hoskold's formula, consisting of a certain discount percentage which varies directly with the life of the property and the so-called risk rate. The latter was here assumed to be 8%. In this way, the Commissioner determined to his satisfaction that the value on March 1, 1913 of the taxpayer's contract was $203,669.07.

In a proceeding to redetermine the assessments which resulted from this valuation, the Board of Tax Appeals heard additional testimony, including that of the

---

58 S.Ct. 61, 82 L.Ed. 32; Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 1941, 119 F.2d 704; Helvering v. Wilmington Trust Co., 3 Cir., 124 F.2d 156, decided September 3, 1941, all refer to Helvering v. Rankin, 1935, 295 U.S. 123, 55 S. Ct. 732, 79 L.Ed. 1343, as pronouncing the fundamental rule. That case is likewise the basis of the decision in Palmer v. Commissioner of Internal Revenue, 1937, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50, relied upon by the government. There is nothing in Helvering v. Rankin, supra, with which our position here is inconsistent. And in Fairmount Cemetery Ass'n v. Helvering, 1937, 67 App.D.C. 345, 92 F.2d 496, 498, a subsequent opinion in the case relied upon by the taxpayer as supporting his method of valuation, the court said that "the determination of value may be said to be a mixed question of law and fact".

5 There has evidently been a change of mind on this subject on the part of the Board. In Elmhurst Cemetery Co. v. Commissioner of Internal Revenue, 1937, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491, the Supreme Court reversed the Circuit Court of Appeals, 7 Cir., 1936, 83 F.2d 4, which had, in turn, reversed the Board. The Board's March 1, 1913 valuation was based on the selling price of the Cemetery Association's lots during the

year just preceding March 1, 1913. The Board used a similar method in its still earlier decision in Fairmount Cemetery Ass'n v. Commissioner of Internal Revenue, 1932, 25 B.T.A. 1272. But in subsequent cases the more elaborate method similar to that employed here has been adopted. See, in addition to the cases cited in note 1, the memorandum decisions in Forest Home Cemetery Co. v. Commissioner of Internal Revenue, C.C.H. Dec. 10, 818-G, decided Sept. 7, 1939, petition for review dismissed, 7 Cir., Aug. 5, 1940 [no opinion filed]; Mount Greenwood Cemetery Ass'n v. Commissioner of Internal Revenue, C.C.H.Dec. 10, 818-H, ibid. In the most recent litigation, this court affirmed the Board's refusal to fix a 1913 value because of the insufficiency of the evidence where there was proof only of the 1913 retail sales price. Riverside Cemetery Co. v. Commissioner of Internal Revenue, C.C.H. Dec. 11, 281-A, decided July 31, 1940, affirmed per curiam, 3 Cir., 1941, 122 F. 2d 415. Cf., dealing with ordinary real estate but reasserting the Elmhurst and Fairmount cases, Estate of Huntington v. Commissioner of Internal Revenue, 1937, 36 B.T.A. 698, pet. dismissed sub. nom. Security-First National Bank v. Commissioner of Internal Revenue, 9 Cir., 1938, 94 F.2d 1019.

Commissioner's valuation engineer.[6] The Board outlined all the evidence concerning the background and the surroundings of the cemetery, as well as the various methods of computation. Refusing to follow the result produced by any one of the latter, it concluded that on all the evidence petitioner's contract was worth on March 1, 1913, $210,614.10 and proceeded to reassess the deficiencies on the basis of that figure as reduced by the amount petitioner had already recovered.

■ In spite of the taxpayer's earnest argument to the contrary we do not see how we have basis for saying that the finding of the Board is not supported by substantial evidence. The facts which are marshalled as relevant in the inquiry are all properly to be considered. Meadow Land attacks the propriety of the Hoskold discount formula because of the lack of certainty of identical annual operative facts but this is answered by the point that the formula was not mechanically applied but only taken as one of the elements considered in fixing a value. The Board considered also such other items as the value placed by the petitioner on its own capital stock, the price paid for the contract at the time of its original acquisition in 1902 and "all other evidence".

Complaint is made that this leaves the taxpayer completely in the dark as to exactly what the Board did.[7] We do not view the matter in the same light. In its opinion the Board has outlined in detail all the evidence before it—the history and development of the cemetery itself, as well as that of the sale of the land, the various methods of computation used by all the parties, the testimony for both sides, and the arguments urged on behalf of the opposing litigants. To require it to state the exact proportional weight to be accorded each would be to ask the impossible. If the petitioner means that he would be unable to set the value of a similar contract after studying the Board's finding in this case, the answer is that valuation in a case of various types of property is something that cannot be determined by exact calculation according to formula. It must by its nature depend on the particular circumstances of each case. This is not a situation where the Board has arbitrarily snatched at a figure at random and magically labelled it March 1, 1913 value. There is every indication on the other hand, of a careful study of all of the facts in evidence and an ultimate finding of fact. Although the Board might well have been more specific in delimiting the exact elements considered in making that finding, there is substantial evidence to support it, and we are powerless, regardless of what our feelings might have been, to disturb it.

■ The second question to be answered is: what part of the basic valuation thus determined is to be recouped in each taxable year. The relevant sections of the statutes quoted above have been amplified by regulations promulgated by the Treasury Department to the effect that "The deduction for depreciation in respect of any depreciable property for any taxable year shall be limited to such ratable amount as may reasonably be considered necessary to recover during the remaining useful life of the property the unrecovered cost or other basis".[8] The Commissioner deducted from the 1913 value which he found, the total amount in dollars for which the taxpayer had claimed and received credit in its returns from 1924 to 1931 inclusive. The remainder of the capital investment thus found to be still unrecovered was amortized over the taxable years here in question. This was done by allowing credit in each year for the proportionate part of the unrecovered basis which the number of square feet of land sold in the taxable year bore to the total footage available at the beginning of that year. Expressed in terms of a mathematical formula, the amount to be recouped in 1932, for

[6] He likewise used the same formula but with different ingredients. His computation of expectable return was founded on an estimate of annual returns fixed by adding the actual receipts for the years 1913 to 1918 and dividing by 6. This was multiplied by 90, the expectable life of the contract per his assumption. This gave a figure of $1,156,500 from which he refused to deduct any expenses. To this sum he applied Hoskold's formula, but at a 6% instead of 8% risk rate. His conclusion was a March 1, 1913 valuation of $210,000.

[7] Comment on similar complaint may be found in Montrose Cemetery Co. v. Commissioner of Internal Revenue, 7 Cir., 1939, 105 F.2d 238, affirmed per curiam, 1940, 309 U.S. 622, 60 S.Ct. 511, 84 L.Ed. 985.

[8] Treasury Regulations 77, promulgated under the Revenue Act of 1932, Article 205, as amended by T.D. 4422.

example, was this: X is to basis unrecovered as of January 1, 1932 as total land sold during 1932 is to total land on hand on the first day of that year. This was approved by the Board.

Petitioner insists first that the government erred in deducting from the 1913 value the amount in dollars which the taxpayer had taken as allowance for exhaustion in the specified years. Instead, it argues, that figure should be calculated on the basis of percentage of square feet sold so as to determine the percentage of land yet to be disposed of and thus yet to be accounted for by way of depreciation of the property in question. To follow the government's method, it is pointed out, will do two things: first, it will result in reducing "an actual and physical unrecovered exhaustion of 91.6%" to 63½% "and an unrecovered exhaustion of $192,922.51 is thereby converted into an unrecovered exhaustion of $126,677.07—of course, entirely to petitioner's injury". Secondly it is inconsistent, he says, to fix 1913 value of the contract at 10 cents per square foot[9] and then determine the value already recovered at the rate of 44 cents a square foot.

■ The answer to the latter point is obvious. Valuation as of March 1, 1913 and allowing credits for exhaustion are two completely separate calculations. Once the former has been determined, the applicable Treasury Regulation requires a reasonable amortization over the remaining useful life of the property of the "unrecovered cost or other basis". Furthermore, Section 113(b) (1) (B)[10] of the Revenue Act of 1932 likewise calls for an adjustment, in determining basis, for exhaustion "to the extent allowed". To compute the latter figure on the basis of 10 cents per square foot will have this interesting result. The taxpayer will be debited with allowances of $17,748.30 whereas actually he has recovered $76,992.52. In other words at the end of the life of the contract petitioner will have recovered over $59,000 more than has been found to be his capital investment as of March 1, 1913. As this court has pointed out in a slightly

different connection,[11] it is the purpose of this clause of the applicable section of the law to prevent double deductions of this type.

The same figures provide ample rebuttal likewise to the first argument. Regardless of how the dispute is presented, be it in round numbers or percentages, there are still only a certain and exact number of dollars to be accounted for. No citation of authority is required to show that the law permits the taxpayer to recover tax-free what has been determined to be the value on a certain date of the property subsequently sold. To manipulate numbers and formulas so as to provide for deduction of a lesser amount is to over-assess the taxpayer. But to perform the same operations with the result of allowing credits in excess of that amount is to deprive the government of its rightful revenue.

Nor is it any answer to assert that the deductions petitioner took were consistently based on the 1913 per square foot valuation it had determined to exist. It has simply been decided that that valuation and the credits taken thereunder were excessive. But still they were taken, and they must be accounted for. This is the very thing intended to be covered by Section 113 (b) (1) (B).

Both the Commissioner and the Board were correct then in finding the unrecovered basis as of January 1, 1932 by deducting from the 1913 value the amount in dollars for which the taxpayer had received credit from 1924 through 1931. The matter of how much of that remaining basis was to be deducted each subsequent year was the next and final step. Petitioner maintains that the straight line method is the proper one. In other words, the number of square feet sold in the taxable year valued at 10 cents per square foot is the amount to be recouped each of the remaining years of the contract. The error of this is obvious from its application. At the end of 1931 there were still available for sale 1,642,425 square feet of cemetery land. To multiply this by 10 cents and proceed to deduct that result in certain

---

[9] This is found by dividing the number of square feet on hand March 1, 1913 into the value determined by the Board.

[10] The section reads: "(1) Proper adjustment * * * shall in all cases be made—

* * *

"(B) in respect of any period since

February 28, 1913, for exhaustion, wear and tear * * * to the extent allowed * * * under this Act or prior income tax laws."

[11] Pittsburgh Brewing Co. v. Commissioner of Internal Revenue, 3 Cir., 1939, 107 F.2d 155.

amounts each year will produce a total figure greater, by over $37,000, than the actually unrecovered value of about $127,000. Likewise, if equal annual allowances for depreciation are permitted, on the basis of an expectable existence of the contract for 80 years, there will again be the same excessive recovery, this time to the extent of almost $34,000.

The government's calculations are satisfactory. The annual allowance is proportioned, as the Board pointed out, "on the basis of the sales, or the 'unit' method" and thus "eliminates the uncertainty as to the life of the contract and makes the deductions have a direct relation to the receipt of taxable income". At the termination of the life of the contract, regardless of how many years are required to complete the sales of the cemetery land, the taxpayer will have received credit for the exact amount of capital he has been found to have invested. We see no reason for upsetting that method.

The decision of the United States Board of Tax Appeals is affirmed.