## SELLMAYER PACKING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 5306, 5307.

Circuit Court of Appeals, Fourth Circuit.

Dec. 21, 1944.

Stanley Worth, of Washington, D. C. (J. Gilmer Korner, Jr., Richard S. Doyle, and Blair & Korner, all of Washington, D. C., on the brief), for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen., in No. 5306, and Helen Goodner, Sp. Asst. to Atty. Gen., in No. 5307 (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, and F. E. Youngman, Sp. Assts. to Atty. Gen., on briefs), for respondent.

Before PARKER and SOPER, Circuit Judges.

SOPER, Circuit Judge.

No. 5307.

The Sellmayer Packing Company, the taxpayer in this case, filed a claim on June 30, 1937 for the refund of processing tax on hogs in the sum of $57,657.44 paid for the period from February, 1934 to February, 1935; and on September 15, 1939 filed an amended claim in the sum of $17,349.01. The Commissioner disallowed the claim on June 30, 1942. A petition to review this decision was filed by the taxpayer with the United States Processing Tax Board of Review on September 10, 1942. The petition contained allegations which described the nature of the taxpayer's operations and asserted that a fair comparison of the period before and after the tax with the tax period established the presumption that the taxpayer bore the burden of the tax to the extent of the refund claimed, and did not shift any portion of the tax to others. The answer of the Commissioner, filed December 28, 1942, denied the material allegations of the claim. The case was transferred to the Tax Court of the United States under the provisions of § 510 of the Revenue Act of 1942, Ch. 619, 56 Stat. 798, 26 U.S.C.A. Int.Rev.Acts. Testimony was taken for fifteen days and the Tax Court determined that no refund was due for reasons set out in a memorandum opinion filed November 30, 1943.

The case is governed by the provisions of §§ 902 and 907 of the Revenue Act of 1936, Ch. 690, 49 Stat. 1648, 7 U.S.C.A. §§ 644, 649 which specify the conditions for allowance of refunds of processing tax, de-

clared unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. The taxpayer must establish to the satisfaction of the court that it bore the burden of the tax and did not shift the burden in any manner. It is prima facie evidence that the burden was borne by the taxpayer to the extent that the average margin per unit of the processed commodity was lower during the tax period than the average margin during the twenty-four months before the effective date of the tax in November, 1933, and the six months' period from February to July, 1936, after the tax was invalidated. The starting point for computing the average margins in these periods is the ascertainment of the gross sales value of the processed articles and this value is the amount derived by multiplying the quantity of the processed goods by the taxpayer's current sales price.

The taxpayer's original records of its current prices were the sales slips or invoices upon which the sales were recorded. These records were used in the preparation of the claim for refund by Herbert E. White, a certified public accountant employed by the taxpayer; but they were not produced at the trial of the case. Instead the taxpayer sought to prove its sale prices by the testimony of the accountant and by exhibits prepared by him in 1939 from the original records. The taxpayer endeavored to account for the absence of the sales slips by the testimony of certain officers and employees which tended to show that the sales slips had been accidentally destroyed in 1941 in the course of building operations at the taxpayer's plant when certain papers believed to be unimportant were burned. The Tax Court ruled that the accountant's testimony was inadmissible because the absence of the original sales slips was not sufficiently accounted for and the petition for review was therefore dismissed because the taxpayer was unable to prove an essential element of its case.

This ruling presents the crucial question in the case. It is admitted that the sales slips were the original records of the transactions in issue and that under the well established rule of evidence, the accountant's secondary testimony was not admissible unless the court was satisfied that the original records had been lost and could not be found after diligent search or had been destroyed without fault or fraudulent design on the taxpayer's part. See Renner v.

Bank of Columbia, 9 Wheat. 581, 596, 597, 6 L.Ed. 166; Riggs v. Tayloe, 9 Wheat. 483, 6 L.Ed. 140; Berthold-Jennings Lumber Co. v. St. Louis, I. M. and S. R. Co., 8 Cir., 80 F.2d 32, 42, 102 A.L.R. 688, certiorari denied 297 U.S. 715, 56 S.Ct. 591, 80 L.Ed. 1001; Consolidated Coke Co. v. Commissioner of Internal Revenue, 3 Cir., 70 F.2d 446; Guilford Granite Co. v. Harrison Granite Co., 23 App.D.C. 1; In re Willfuehr et al., S.D.N.Y., 292 F. 387.

It is conceded also that the evidence on the point presents an issue of fact and that the finding of the Tax Court thereon is binding on this court if supported by substantial evidence; but, it is contended that there is no substantial evidence to support the court's finding adverse to the taxpayer. Our examination of the evidence now to be summarized leads us to the conclusion that the taxpayer's contention should not be sustained. The sales slips were examined not only by the taxpayer's accountant, before the amended claim for refund was filed in September, 1939, but also in December, 1939, and January, 1940, by two United States Revenue Agents, Harrison and Swett, and again in December, 1940, by two other revenue agents, Plummer and McFerrin; but after that, according to the testimony of officers of the corporation, there was no occasion to refer to the sales slips until the end of 1942. The operation of the plant had been stopped in 1937. The sales slips were then kept in the record room of the plant where they remained during the several examinations of the accountants for the taxpayer and the government. But, in 1941, it was decided to eliminate the record room in the course of extensive alterations of the building and it became necessary to move the records and it was then, according to the taxpayer's testimony, that they were accidentally destroyed. This testimony tended to show that the records were moved by a foreman and two laborers who were instructed by the officers of the taxpayer to place the important records, including the sales slips, in the cold storage room but the officers did not make any check to see that their instructions were obeyed. In 1942 they searched for the records in the ice box and elsewhere in the plant and could not find them. Seach was also made by a deputy United States marshal and a deputy clerk of the Criminal Court of Baltimore in February, 1943 but the records could not be found in the plant. The foreman and the laborers instructed to move the records disagreed in their testimony. The laborers testified that five truck loads of papers were burned and the rest placed in the ice box and that amongst the papers burned were some invoices; but they admitted that they did not know what an invoice was. The foreman, on the other hand, testified that all the papers in the record room were transferred to the cold storage room with the exception of certain newspapers and magazines which were burned, and that the sales slips were still in the ice box in October, 1942.

In various respects that need not be described in detail, the testimony of the principal officers for the taxpayer was inconsistent within itself and with the testimony of other witnesses, and the Tax Court said that it was unable to credit the testimony of the officers. It is conceded that there is substantial evidence to support this conclusion and that it is binding upon this court. Having rejected this testimony for sufficient reasons, the Tax Court found it impossible to conclude from the rest of the testimony that the records were not in existence when the secondary evidence was offered in court. The taxpayer points out that the testimony of the foreman was untruthful in some respects and contends that the Board should have accepted the testimony of the laborers as to the destruction of the sales slips by fire. But, it is obvious that here again the point for decision is the credibility of the witnesses of which the Tax Court is the final judge; and, in addition, that the testimony of the laborers was not so definite as to show with certainty the nature of the papers which were burned. We think that the record furnishes substantial support for the conclusion of the Tax Court that the taxpayer had not borne the burden of showing that the sales slips had ceased to exist. Under the rule, the party who offers secondary evidence of the contents of a document alleged to be lost must go further than to show that it is doubtful whether or not the document exists; he must demonstrate to the satisfaction of the court that although it once existed, it cannot be found despite a diligent and unsuccessful search and that there is no reasonable probability that it has been designedly withheld or suppressed.

The Tax Court also considered the latter alternative and held that if the sales slips were not in existence at the time of

the hearing, the only logical conclusion was that they had been deliberately destroyed to prevent their production at the hearing. In our view, this conclusion also finds substantial support in the record before us. In the first place there was the evidence of the foreman who said that the sales slips had been stored in the ice box in 1941 and were still there in October, 1942, whereas the officers of the corporation, whom the court was unable to believe, said that in September, 1942 the sales slips were not in the ice box and could not be found. In the next place there was evidence that some of the sales slips had been deliberately altered so as to inflate the average margin in the pretax period and hence to show that it was higher than the average margin in the tax period. The revenue agents testified that in December, 1940 they discovered the altered sales slips and placed most of them at the bottom of the package of sales slips for the appropriate month and left them at the plant over the week end and that some one removed the altered sales slips so that the revenue agents could not find them when they returned to work on the following Monday. A few samples of the altered sales slips were placed in a desk drawer at the plant by the agents on Saturday and were not disturbed. These sales slips the revenue agents retained without the taxpayer's knowledge, and were offered in evidence at the hearing. It is obvious that if it was brought home to the taxpayer's officers that the alterations had been discovered by the agents it would be to the interest of the taxpayer to remove or destroy the sales slips and depend at the trial upon the report prepared by the taxpayer's accountant in 1939.

The taxpayer makes the objection that the samples retained by the agents were not admissible in evidence because they were secretly taken in violation of the prohibition of the Fourth Amendment against unreasonable searches and seizures in a manner condemned by the Supreme Court in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. In this case the court said (255 U.S. at pages, 305–6, 41 S. Ct. 263):

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, and therefore the answer to the first question must be in the affirmative."

 No objection to the admissibility of the sales slips was made on this ground at the trial. The objection was confined to the point that the taxpayer was taken by surprise. Moreover, the evidence consisting of the samples of the altered sales slips was merely cumulative since the agents had testified without objection that alterations in the sales slips had been made. For these reasons alone the objection to the admissibility of the samples might be overruled, but in addition it is clear that the agents were not guilty of improper conduct. They were acting within their rights in examining the taxpayer's records for § 914 of the Revenue Act of 1936, 7 U.S.C.A. § 656, confers authority upon the Commissioner, by any officer of the Treasury Department or Bureau of Internal Revenue, to examine any books, papers, records or memoranda which are relevant to any claim made pursuant to the statute. It was in the course of such an examination, to which the taxpayer interposed no objection, that the agents discovered the altered sales slips and were later convinced that the majority of them had been sur-

reptitiously removed by the taxpayer leaving only the samples in the agents' possession. The Tax Court found that the agents had reasonable ground for this suspicion and it follows that they were justified in preserving and retaining possession of papers of evidential value which otherwise might have been destroyed. No unreasonable search or seizure was involved in this conduct.

■ The taxpayer also makes the point that since the Commissioner did not raise the issue of fraud in his answer, the court had no right to consider it; and that in any event the burden of proof is placed upon the Commissioner by § 1112 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 1112, in any proceeding involving the charge that a taxpayer has been guilty of fraud with intent to evade the tax. It is true that the Commissioner did not claim fraud in his answer and is not claiming fraud penalties either in this case or in the companion case No. 5306. The evidence which tends to show fraud on the part of the taxpayer was elicited at the hearing and considered by the Tax Court in its bearing upon the admissibility of secondary evidence to show the gross sales value of the processed commodities. On this issue the burden was not on the Commissioner but on the taxpayer to satisfy the court that the original records were not available because they had been accidentally lost or destroyed. The burden did not shift when the testimony tended to show that the records may have been surreptitiously secreted or destroyed so as to bolster up the claim for tax refund.

■ The same considerations answer the taxpayer's contention that the Tax Court did not find definitely either that the slips were in existence and were purposely withheld by the taxpayer or that they had been deliberately destroyed to prevent production at the hearing. It was not necessary for the Tax Court to make these findings more definite. It was sufficient to point out that the taxpayer had failed to account for the absence of the original records and that the evidence tended to show one or the other of the alternatives, either of which required the rejection of the evidence. Since the taxpayer has failed to show that it bore the burden of the tax, its claim for refund must be denied and the judgment of the Tax Court in case No. 5307 will be affirmed.

## No. 5306.

The appeal of the Sellmayer Packing Company in this case involves deficiencies in unjust enrichment tax in the sums of $18,353.90, for the year 1935, and $659.52 for the period from January 1 to January 6, 1936. Processing taxes paid by the taxpayer for the period February, 1934 to February, 1935, constituted the basis for the claim for refund considered in the companion case No. 5307, while the instant case presents for review a determination of the Commissioner that the taxpayer is liable for the unjust enrichment tax, imposed by § 501(a) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 700(a) (1), equal to 80 per cent of that portion of the net income of every person from the sale of articles with respect to which a federal excise tax was imposed upon such person but not paid, which was attributable to shifting the burden of the tax to others.*

The taxpayer was in the business of slaughtering cattle, hogs principally and also some sheep, and in selling meat and processed products. It paid the processing tax for the period February, 1934 to February, 1935 and accrued, but did not pay the tax for the period from March 1, 1935 to December 31, 1935 and January 1 to January 6, 1936, in the sums of $22,942.37 and $824.40 respectively. On December 15, 1936 it filed a return of tax on unjust enrichment for 1935 stating without computation of tax that no tax liability was assumed; and on February 3, 1940 filed a similar return for the period January 1 to January 6, 1936. The Commissioner determined a deficiency of 80 per cent of the tax accrued, that is, $18,353.90 for the first

---

* "Sec. 501. Tax on net income from certain sources

"(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

"(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such persons but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed."

period and $659.52 for the second period above mentioned, on the theory that the entire burden of the tax had been shifted to others.

The taxpayer issued price lists monthly, but was generally unable to maintain them and changed them frequently. In fixing the prices the taxpayer took into consideration the cost of the hogs, the state of the market and the weather. The taxpayer endeavored to include the processing tax as an element of the cost and entered the amount of the tax upon the sales slips or invoices as part of the purchase price.

The total sales of beef, pork and other articles for 1935, as shown by the taxpayer's books, was $472,148.17. The total expenses, including the purchase price of the goods, was $510,463.86. There was a decrease in inventory during the year of $1,341.95 so that the business was run at a loss in 1935 of $39,657.64. The taxpayer's books allocated the cost of the goods and the expenses of the business between hogs and other items, but did not allocate the receipts from the sales, so that it did not appear from the books whether the business in hogs upon which the tax was imposed was run at a profit or a loss. The receipts from the sale of hogs were ascertainable from sales slips or invoices which were customarily prepared in duplicate but these invoices were not produced at the trial in the Tax Court nor adequately accounted for by the taxpayer, and secondary evidence of their contents offered by the taxpayer's accountant White was refused admission by the Tax Court, as we have shown in the foregoing discussion in case No. 5307.

The taxpayer contends that there was no net income from the hog business and therefore no tax liability because the Act expressly provides that the tax shall not exceed the net income from the articles upon which the tax was imposed. Failing to prove the lack of net income by secondary evidence of the contents of the sales slips, the taxpayer offered other proof which the Tax Court found to be insufficient. We shall first consider the correctness of this ruling.

■ In January, 1940 an examination of the taxpayer's books and papers was made by revenue agent Swett who made use of the original sales slips in order to compute the amount of the receipts from the sales of hog products. He arrived at the amount

of $233,785.20, which indicated a taxable net income of $3,370.61 for 1935 and $824.40, for 1936 on this department of the business; and this figure was used as the basis of the Commissioner's thirty day letter to the taxpayer of August 24, 1940, wherein the tax deficiency was estimated to be $2,696.49 for the year 1935 and $659.52 for the year 1936, or a total of $3,356.01 with an added penalty of $164.88. Swett's calculation was offered in evidence by the taxpayer but rejected as inadmissible, and also as unconvincing. It is sufficient for us to say that the testimony was inadmissible for the reasons given in case No. 5307. It was based on the original sales slips which were not produced or accounted for at the hearing. It is not and cannot be claimed that the Commissioner is bound by the statements in the thirty day letter which did not actually determine the deficiencies and was abandoned after the discoveries with regard to the sales slips described in the companion case No. 5307 were made. The deficiencies in suit were subsequently determined by the ninety day letter sent by the Commissioner to the taxpayer on June 15, 1942.

■ The taxpayer also urges that even if the Tax Court is justified in rejecting the computation of the taxpayer's accountant White and of the revenue agent Swett because they were based on the absent sales invoices, the court should have accepted other computations of the sales figure for hogs made by the accountant White. There was evidence of the cost of the hogs and the cost of the cattle separately stated in the taxpayer's books and also the total amount of the sales of both classes of goods taken together. White made the assumption that the gross profit on hogs and the gross profit on cattle bore the same ratio to the cost thereof and thereby arrived at total sales of $222,092.31 for the hog products. Setting off this figure against the cost of the hogs plus the expenses of the business allocated to hogs on the books of the taxpayer, he arrived at the conclusion that the taxpayer derived no net income from the hog business. The mere statement of the method employed in this computation demonstrates its speculative character and justified its rejection by the Tax Court.

■ An alternative computation offered by the taxpayer was based on duplicate copies of a limited number of sales invoices produced from the files of state and chari-

table institutions to which the taxpayer had made certain sales. It was urged that the prices shown by these invoices should be accepted as representative and as a valid basis for computing the total amount of the taxpayer's hog sales. The court found the computation unreliable because the prices shown on these invoices were not representative of the business as a whole. They were fixed by contract and were not representative of the taxpayer's prices generally and they did not include any prices at all for certain products during certain months. There was no error in this ruling since there was evidence in the record to support it.

The case before the Tax Court after these rulings were made presented the following situation: The Commissioner on his part had held that the taxpayer had shifted the burden of the entire tax to others and had earned a net income on hog products of not less than 80 per cent of the tax imposed, while the taxpayer on its part merely showed that its entire business was run at a loss and failed to show whether the loss occurred in the hog business or the cattle business, or both, and presented figures which were consistent with the theory that the hog business may have been run at a profit as great as the deficiency determined.

Under these circumstances, the order of the Tax Court must be affirmed. A similar case was before this court in Greenwood Packing Co. v. Commissioner of Internal Revenue, 4 Cir., 131 F.2d 815, where the taxpayer offered no evidence that it had not shifted the invalid processing tax to others and offered no convincing evidence that it had conducted its processing department at a loss but confined its testimony to showing that its business as a whole was conducted at a small net loss for the taxable year involved. We held there, as we must hold in the instant case, that the determination of the Commissioner of a tax deficiency must be accepted as prima facie correct and the burden rests upon the taxpayer to prove the contrary. See, also, Union Bleachery v. Commissioner of Internal Revenue, 4 Cir., 97 F.2d 226, 230. It is obvious that the taxpayer has failed to bear this burden in the pending case.

It is true that the failure of a taxpayer to show that he owes no part of a deficiency determined by the Commissioner or his failure, if liable at all, to show the correct amount does not justify a determination by the Commissioner which is shown by the evidence to be arbitrary and excessive. Helvering v. Taylor, 293 U.S. 507, 514–15, 55 S.Ct. 287, 79 L.Ed. 623; Wilson Coal Land Co. v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 185; Fairmount Cemetery Ass'n v. Helvering, 67 App.D.C. 345, 92 F.2d 496. This principle, however, does not avail the taxpayer in the pending case because not only has it offered no proof to show that it was not liable for the tax, but it cannot be said that the Commissioner's determination is arbitrary. The evidence showed the amount of tax imposed by the statute on the taxpayer's business, an effort on the part of the taxpayer to pass the tax on to others by adding it to the amount of the purchasers' bills, and an unexplained failure to produce the original records of sales from which only a correct picture of the hog business and the profit or loss sustained could be drawn. For these reasons, the judgment of the Tax Court must be sustained.

Affirmed.

