NELSON, Appellant v. RAHMAN, Respondent

(219 N.W.2d 474)

(File No. 11328. Opinion filed June 25, 1974)

**T. F. Martin, McCann, Martin & Mickelson, P. C.,** Brookings, for plaintiff and appellant.

**W. A. Hackett, Austin, Hinderaker & Hackett,** Watertown, for defendant and respondent.

BIEGELMEIER, Chief Justice.

Plaintiff was injured when the automobile he was driving, which was stopped at a red signal light, was struck in the rear by an automobile driven by defendant. Plaintiff claimed the accident caused his head to jerk back and forth resulting in injuries to his neck.

Trial was to the court sitting without a jury. American Family Insurance Company appeared on behalf of the defendant under the uninsured motorist provision of Nelson's insurance policy. The trial court awarded plaintiff $2,500—$671.89 for

medical expenses and $168.83 for damage to his automobile, leaving $1,659.28 for past and future pain and suffering and permanent injury. There was no claim for loss of wages. This is an appeal by the plaintiff from the judgment entered in his favor.

The only question before this court is the plaintiff's claim of the insufficiency of the award for his claims of pain, suffering and permanent injury.

The day after the accident, plaintiff visited Dr. Bruce Lushbough, a family physician, in Brookings, South Dakota. At that time plaintiff's complaints were minimal, but he did evidence pain in his neck. X rays revealed no bone or joint abnormalities; thus, plaintiff's injuries are not those that are plain and apparent but are subjective in nature, requiring the extent thereof to be shown by oral testimony. Plaintiff saw Dr. Lushbough several times, the last examination being four days before trial. Dr. Lushbough testified that at one time or another his examinations revealed limitations in all ranges of motion of the neck, tenderness of muscles, muscle spasms, numbness in the left arm and leg and symptoms of pain. The only treatment prescribed by Dr. Lushbough was aspirin.

During this period Dr. Lushbough referred plaintiff to Dr. Robert E. Van Demark, an orthopedic surgeon, Dr. E. R. Ortman, a chiropractor, and the Mayo Clinic in Rochester, Minnesota. Dr. Van Demark examined the plaintiff but did not recommend any treatment. Plaintiff testified that Dr. Ortman's three physiotherapy treatments improved his lateral neck movement. Plaintiff was at Mayo for two days receiving massage and heat treatments. Doctors there prescribed a home exercise program and home heat treatments.* Dr. Lushbough was of the opinion that plaintiff was permanently limited to two-thirds of normal backward extension of his neck and would suffer pain upon maximum movement of his neck.

At the time of the collision, plaintiff was about 34 years old. He participated in city league basketball, bowling leagues,

---

* The court found Dr. Lushbough's charges were $212.50, Dr. Ortman's charges were $15, Dr. Van Demark's charges were $98 for his "examination", and the Mayo Clinic charges were $231 for a "physical examination". It allowed mileage for these trips.

water-skiing, golf, and was an avid hunter. Dr. Lushbough did not limit any of these activities except that he advised against playing basketball. While plaintiff continued his normal occupation and lost no wages or income, he testified that his injuries limited his participation in sport activities, e. g., while hunting geese he had to lie on his back and when playing cards he often had to leave the table to walk around and stretch. He testified that he finished the basketball season after the accident, but he played only four to eight minutes per game as compared to twenty-six minutes per game before the accident, and that he had not played since because he suffers pain while playing. He further testified that subsequent to the accident he had to quit water-skiing after attempting to engage therein, and that he had missed two bowling seasons. Testimony of other witnesses corroborated these changes in plaintiff's participation in some of the activities.

The trial court found:

"That the X-rays taken by the medical people involved were all negative so far as injuries were concerned except the evidence shows that Plaintiff has a normal range of movement in the neck except in extension which is restricted 30 degrees but that his lateral bending and rotation of his neck are normal as well as the movement as to flexion.

"That no treatments were ever prescribed by the doctors except aspirin, heat lamp and exercise.

"That Plaintiff is somewhat restricted in his sporting activities as a result of the injury involved in this lawsuit such as basketball, water-skiing, hunting and bowling, but that he presently belongs to a bowling league and bowls regularly and does continue to play basketball, waterski and hunt.

"That Plaintiff has some pain which increases to some degree while engaging in the sporting activities hereinbefore mentioned, but otherwise leads a normal life for a man of his age."

From these findings the court concluded that plaintiff was entitled to $2,500, and judgment was entered accordingly.

When considering plaintiff's argument that the damages awarded are insufficient, the court must bear in mind that, similar to the review of an award claimed excessive, the difference between the trial judge's award or a jury "verdict and what the members of this court would allow is not the measure" of either. Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597. As observed there,

> "The verdict was approved by the trial judge who is properly 'clothed with a latitude of discretion in dealing with this issue. As a participant in the original proceedings the trial court is best qualified to accurately judge the forces that shaped the verdict of the jury * * * (and) a reviewing court should be equally cautious in dealing with a verdict the trial court has approved.' Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700. This court has no standard by which to judge the reasonableness of a verdict and our review is governed by the often quoted rule appearing in Schuler v. City of Mobridge, 44 S.D. 488, 184 N.W. 281, as follows:
>
>> 'The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption.' " 82 S.D. at 19-20, 140 N.W.2d at 603.

See Hotovec v. Howe, 79 S.D. 337, 111 N.W.2d 748. This guide is much more persuasive when the award (verdict) has been made by the trial judge in the first instance. Cf. Bunnell v. Kindt, 83 S.D. 377, 159 N.W.2d 923. This is substantially what SDCL 15-6-52(a) directs. That section provides in part:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In a case involving a claim of excessive damages the court stated:

> " 'There are no accurate means of monetarily evaluating the detriment caused plaintiff by her pain, suffering and discomfort. Of necessity the amount of damages to be awarded therefor is largely left to the good judgment of the jury. * * * the Tufty case admonishes us to act with reluctance in disturbing an award approved by the trial judge. * * *' " Hoto-vec v. Howe, 79 S.D. 337 at 341-342, 111 N.W.2d 748 at 750.

This does not prevent a court from granting a new trial when the amount "awarded by the jury is grossly inadequate and disproportionate to the injuries sustained." Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924. See also Lanning v. Schulte, 1967, 82 S.D. 528, 149 N.W.2d 765.

Plaintiff's brief ends asking the court to grant a new trial on the damage issue, or in the alternative to increase the award; this authority is expressly given trial courts by SDCL 15-6-59(a), especially in actions tried without a jury. Our review as an appellate court is set out above in quotations from some of our prior opinions.

While the court has stated in several opinions that the awards claimed excessive were generous, it has affirmed them; likewise, this award appears modest, yet, in accord with the above guidelines and giving due regard to the opportunity of the trial judge to observe the witnesses and their demeanor while testifying, especially the plaintiff's movements and appearance, we cannot substitute our judgment for his.

Judgment affirmed.

All the Justices concur.