### BENSINGER v. WEST.

Court of Appeals of Kentucky.

Feb. 13, 1953.

Edward W. Bensinger, Louisville, for appellant.

Robert Hubbard and Stanley Briel, Louisville, for appellee.

DUNCAN, Justice.

The action involved on this appeal is based upon one of the contracts involved in the appeal of Bensinger's Coexecutors v. West, Ky., 255 S.W.2d 27. Although some of the facts involved on the other appeal are stated in that opinion, we will, in the interest of convenience, repeat them here so far as they are pertinent to the present appeal.

On January 10, 1947, Jerry West, then sixteen years of age, entered into a written contract with one Jake Glenn by the terms of which he became employed by Glenn for a period of five years as stable boy and jockey. As payment for the services to be rendered under the employment, Glenn agreed to provide the infant with board, lodging, traveling and medical expenses, and pay a salary of $50 per month during the first year, $75 the second, $100 the third, $125 the fourth, and $150 per month during the fifth year. On November 20, 1948, Glenn leased the services of the infant to Harry Bensinger and Coralie R. Bensinger, his wife. Subsequently, on March 31, 1949, the Bensingers purchased the contract, assuming all obligations as to support and wages, and Glenn made a complete assignment of all of his rights thereunder. From November 20, 1948, to January 10, 1950, West worked for the Bensingers under the terms of his agreement with Glenn. On the latter date, West pur-

chased from Harry Bensinger his release from the Glenn contract, and his subsequent renunciation of that purchase is involved in the other appeal which we have mentioned.

After the death of Harry Bensinger, West, through his statutory guardian, instituted this action against Bensinger's executors to recover the sum of $1,456, alleged to be the amount of traveling, medical, and other personal expenses incurred in the service of the Bensingers from November 20, 1948, to January 10, 1950. Amended petitions were subsequently filed, increasing the amount sued for to $1,764, and Coralie Bensinger was joined as a defendant individually and as a surviving partner of Harry Bensinger. The case was referred to the Master Commissioner for proof, and upon the testimony heard, the Commissioner reported that West was entitled to recover $1,618. Exceptions to the report were overruled.

Conceiving that the testimony supporting the claim was not competent against the estate of Harry Bensinger because of the provisions of Civil Code of Practice, Section 606(2), a judgment was awarded individually against Coralie Bensinger, but the action was dismissed against the executors of the estate of Harry Bensinger. The appellee does not complain of the dismissal against the estate, and Coralie Bensinger, upon the appeal, insists that the judgment against her should be reversed for the following reasons: (1) the testimony supporting the claim is incompetent against her under Civil Code of Practice, Section 606(2); and (2) the court erred in permitting the filing of the several amendments to the original petition.

■ Civil Code of Practice, Section 606 (2), precludes a person from testifying for himself concerning any transaction with one who is dead when the testimony is offered except to the extent of affecting one who is living and was present when such transaction took place. If the testimony supporting the claim involved transactions with Harry Bensinger occurring at a time when Coralie Bensinger was not present, the testimony would be incompetent against her as well as the estate.

■ On the whole, we do not think the testimony involves a transaction with a decedent within the inhibition of the section involved. The introduction of the Glenn contract, and the agreement by which the Bensingers assumed the obligations which it imposed, was not testimony relating to a transaction with the deceased. It would not have been competent for West to testify that he saw Harry Bensinger sign the contract unless it was signed in the presence of Coralie Bensinger, but there was no controversy concerning his execution of the agreement or that his purported signature was genuine. The other testimony supporting the claim relates to trips made by West to New Orleans, Detroit, Chicago, and other places during the time he was employed by the Bensingers, and the period of time spent on each of the trips together with expenses he incurred and paid. This testimony does not relate to a transaction with Harry Bensinger and was competent for the purpose of establishing the amount of the expenses and their payment by West.

■ We are not required to determine whether or not Harry Bensinger and Coralie Bensinger were partners in their employment of West. They both signed the agreement by which they assumed the obligations of the Glenn contract and a joint obligation was created, enforceable against either.

■■ We are not impressed with appellant's argument that the amendments to appellee's petition were improperly filed. Although the original action against the executors sought a settlement of the estate of Harry Bensinger, this relief was denied and the action was resolved into a joint suit against the estate and Coralie Bensinger to recover upon an express contract. The amendments did nothing more than increase the amount originally sought and add Coralie Bensinger as a joint defendant. Courts are permitted a wide discretion in allowing amendments and this discretion is limited only by the requirement that the amendments must be in furtherance of justice and not substantially change the cause of action or defense. Bullock v. Young, 252 Ky. 640, 67 S.W.2d

941; Crittenden County v. Towery, 264 Ky. 606, 95 S.W.2d 233. We do not think the court abused its discretion in permitting the amendments here.

■ Although not argued in appellant's brief, the record presents more difficult questions upon which the authorities are not altogether in agreement. A correct disposition of the appeal requires our consideration of these questions. Admittedly, the infant did not fully perform his contract of employment. Although not specifically renouncing the Glenn contract, he purchased his release on January 10, 1950, and his renunciation of the latter agreement, coupled with his failure to continue the contract of employment, in effect amounted to a renunciation of the original agreement.

· The precise question has never been decided in Kentucky, and the courts of other States are in some disagreement concerning the right of an infant to disaffirm his express contract when partially performed and recover in a suit on the contract his wages or benefits for the time he worked. The Supreme Court of North Dakota in Yancey v. Boyce, 28 N.D. 187, 148 N.W. 539, Ann.Cas.1916E, 258, held that an infant employed by a farmer to work for a season with wages payable at the end of the employment could not recover for his work during a part of the season where the contract was disaffirmed before the term of employment had ended. The reason given for the rule was that an infant should not be permitted to disaffirm and affirm his contract at the same time. The same reasoning was followed in Harney v. Owen, 4 Blackf., Ind., 337, 30 Am.Dec. 662, but was subsequently overruled in Wheatly v. Miscal, 5 Ind. 142.

The great weight of authority seems to support the contrary rule which is stated in 27 Am.Jur., p. 787, sec. 53, Infants:

"According to the general rule, an infant who has entered in a special contract for his services may repudiate that contract and recover the fair value of the services which he rendered pursuant to the contract, less any payment that he may have received, and this rule is applied also where there has been only partial performance by the infant of an entire contract."

The majority rule has been followed by the courts of last resort of Maine, Massachusetts, New Hampshire, New York, Pennsylvania, Tennessee, Virginia, Rhode Island, and Vermont. We do not defer to the majority rule simply because it represents the weight of authority. In our opinion, the rule is sound although its application may in some instances seem harsh. In the absence of conduct which might be made the basis of an estoppel, an infant should not be denied wages or benefits earned by partial performance of a contract which he disavows before complete performance. In some cases it has been held that the employer may offset against the infant's claim any damages which he has sustained by the disavowal of the contract, but it is not necessary to reach that question here since no such damages are claimed or shown.

■ Finally, we consider the question of whether or not the evidence supports the judgment. The question is difficult because of the failure of appellant to plead payment as an affirmative defense. Appellee introduced as on cross-examination a trust officer of the bank which is serving as one of the coexecutors. Through this witness, nineteen checks signed by Harry Bensinger in the total amount of $2,880 were introduced. Eighteen of these checks in varying amounts were payable to and cashed by Jerry West. One check in the amount of $450 was payable to Jerry's father, William I. West, and bore the notation "from your son Jerry." Checks in the total amount of $1,000 purported to be for wages and notations on other checks indicated that $406 was paid for "stakes and mounts." We have no explanation of the meaning of the latter notation, except the testimony of Jake Glenn as to the custom of paying bonuses to jockeys when riding a winning race or earning a place or show purse for their employers. Eight of the checks amounting to $1,482, including the check to William I. West, bear no notation or legend indicating the purpose for which they were given. Jerry West at-

tempted to make some explanation as to the purpose of these checks, but this testimony was properly excluded by the Commissioner because it related to a transaction with Harry Bensinger and appears merely as an avowal.

It is significant that the amount of the unexplained checks exceeds only slightly the amount claimed by the original petition. The only sums which the Bensingers were required to pay by the contract were wages and expenses, and it is not an unreasonable assumption that the checks bearing no notation were in payment of expenses. If payment had been plead as an affirmative defense, we would have no difficulty whatever in concluding that the checks are sufficient evidence of payment.

Generally, payment is regarded as an affirmative plea and is not put in issue by a general denial. At common law proof of payment was admissible under a plea of the general issue. The rule has been largely changed by code or statutory provision, and in all States with the code system of pleading similar to our present form, such a plea must be affirmatively alleged. However, in many of the code States a distinction has been recognized in cases where the fact of nonpayment is regarded as an essential part of the plaintiff's cause of action. In 40 Am.Jur., page 870, sec. 230, it is said:

"Likewise, it frequently has been held that where an allegation of nonpayment in the complaint is regarded as an essential part thereof, payment may be shown under a general denial, since it is not 'new matter' under such pleadings * * *."

In Kentucky, it has been uniformly held that in actions upon a promissory note or other negotiable instrument an affirmative plea is necessary to raise the issue of payment. Sandmann v. Getty, 254 Ky. 496, 71 S.W.2d 954, and cases therein cited. In other actions not involving that type instrument, there is some conflict of authority. In American Oil Pump & Tank Co. v. Sizemore, 210 Ky. 690, 276 S.W. 558, it was indicated that the rule applied with equal force regardless of the type of contract involved. On the other hand, in Turn-

er's Adm'r v. Ward, 201 Ky. 295, 256 S.W. 389, 391, it was said:

"The first and second paragraphs of the answer are in effect the same defense differently stated, the one a denial of the alleged nonpayment, the other an averment of payment of the sums sued for, and, stated either way, tendered a complete defense to the entire action * * *."

We think a valid distinction may be drawn between an action upon a note or other instrument when its possession by the plaintiff creates a presumption of nonpayment and a contract such as that involved here when no presumption of nonpayment arises. In the latter case, nonpayment must be alleged in the petition or complaint, and a traverse may be considered as raising an issue of payment.

Measured by the distinction, we think payment was an issue here although not affirmatively alleged. A consideration of the checks compels our conclusion that the traveling and other expenses of appellee were paid currently by Harry Bensinger during his life.

The judgment is reversed with directions to enter a judgment dismissing the petition.