HOTOVEC, Respondent v. HOWE, Appellant

(111 N.W.2d 748)

(File No. 9921. Opinion filed November 17, 1961)

**Blaine Simons,** Sioux Falls, for Defendant and Appellant.

**Davenport, Evans, Hurwitz & Smith,** and **James R. Adams,** Sioux Falls, for Plaintiff and Respondent.

HANSON, J.  This action was brought to recover $25,-150 for personal injury and property damage allegedly caused by a collision of automobiles. Defendant denied liability in his answer. However, at the commencement of trial he admitted liability for the damages, if any, sustained by the plaintiff in the collision. Consequently the question

of damages was the only issue submitted to the jury which returned a verdict for plaintiff in the amount of $10,000. Defendant appeals from the judgment and order denying a new trial contending (1) the verdict is excessive and, (2) the trial court erred in admitting secondary evidence of plaintiff's earnings.

The only witnesses were the plaintiff, his wife, and his doctor. No evidence was offered by defendant. The evidence shows the plaintiff, Duane Hotovec, is 31 years of age, married, and has four children. He did not complete high school and has worked as a lineman or in gas stations during his adult life. He enjoyed good health before the accident. At the time of the collision on September 27, 1959, he was operating a gas station in Sioux Falls under a lease. The collision apparently occurred when plaintiff stopped his automobile in response to an intersectional stop light and was unintentionally bumped by defendant's car. The impact threw plaintiff's head backward and forward. His head did not strike any object and there were no visible or outward signs of injury. In response to defendant's inquiry immediately after the collision plaintiff said he wasn't hurt but his head felt kind of funny. Later on he developed a severe headache and pain in his neck. The next day he consulted and was examined by Dr. Robert Donahoe. X-rays were taken which did not show any dislocations or fractures. Dr. Donahoe described the injury as a severe whiplash which apparently involves a stretching and tearing of muscles, nerves, lymphatics, blood vessels, and soft tissues of the neck.

Plaintiff made numerous trips to Dr. Donahoe's office for treatments from September 28, 1959, to May 1, 1960. He was given drugs, heat and traction treatments, and physiotherapy. The doctor also prescribed a cervical brace which plaintiff wore daytimes from the middle of October 1959 to the middle of April 1960. Following this course of treatment and on May 1, 1960, plaintiff had regained full range of neck motion except for a 20-degree restriction in forward flexion (could not put chin on chest) and a similar

limitation in turning his head to the right. These limitations resulted from a scarring of soft tissue. With reference to the permanency of such condition Dr. Donahoe testified as follows:

"Q. There is nothing that you can do to eliminate the scar tissue? A. No.

"Q. And what he will have to do with that is simply continue to try to turn farther; is that right?

A. Yes, sir.

"Q. Scar tissue is permanent and won't stretch; is that right? A. Well, if you get at scar tissue early enough, you can stretch it, but if it is there for any period of time, then it's a permanent thing.

"Q. In other words, it doesn't dissolve or anything like that? A. No, sir, it does not."

Plaintiff drove his own car on visitations to the doctor and for physiotherapy at the Sioux Valley Hospital. Some of these trips were in bad weather. Also, until plaintiff sold his gas station in January, 1960, he went down each evening and closed out the cash register and occasionally stopped by the station in the morning to see how things were going. The gas station was sold on January 7, 1960, at no loss and there was no loss of earnings up to that date.

■ Plaintiff was allowed to testify to the average monthly earnings received by him from the operation of his gas station in 1958 and 1959. His testimony was based on a summary or statement prepared from original business records and was used to refresh his recollection. Such testimony was admitted over defendant's objection that it was not the best evidence. The original business records were produced at the trial and had been available for the use and inspection of defendant since the pre-trial examination of plaintiff. The original records, of course, would have been admissible and would constitute the best evidence

of what the records contained. Nevertheless, there is a rule of convenience based on practical necessity which allows secondary proof of the contents of business records and accounts in the discretion of the trial judge. The rule is stated in Vol. IV Wigmore on Evidence, 3rd Ed. § 1230, p. 434 as follows:

"Where a fact could be ascertained only by the inspection of a large number of documents made up of very **numerous detailed statements**—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.

"Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available:

"The most commonly recognized application of this principle is that by which the state of **pecuniary accounts** or other business transactions is allowed to be shown by a witness' schedule or summary."

In an action to recover damages for personal injury loss of profits from a business in which a plaintiff is interested and which depend upon or are largely derived from in-

vestment of capital, labor of others, or other similar variable factor ordinarily is considered too remote, uncertain, and speculative to be admissible as proof of loss of income or diminution of earning capacity. See Anno. 12 A.L.R.2d 288. However, the competency of such evidence was not questioned and we find no error in the discretionary ruling of the court as to the mode of proof.

■ Plaintiff returned to full employment on May 1, 1960, and has not lost a day's work since. He started at a salary of $60 per week and at the time of trial was receiving $70 per week, which rate would probably continue for two or three months. He testified the prevailing wage rate for experienced gas station employees in Sioux Falls and vicinity was $80 per week plus $1 per hour for night work and on Sundays. Computed on this basis plaintiff's loss of earnings from January 7, 1960, to May 1, 1960, amounted to $1,280. His other actual expenses were $152.49 for repairing his automobile, $45.90 for cost of the cervical brace, other medical expense of $673.68, aggregating $872.07. His total actual expense and loss of earnings shown by the record amounts to the sum of $2,152.07 leaving a balance of $7,847.93 for pain, permanent injury, and incidental expenses incurred by plaintiff such as the cost of trips to the doctor.

While the verdict is extremely liberal, we are unable to say it is so excessive "as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption." Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W. 2d 700, 702, and SDC 1960 Supp. 33.1605(5). Nor are we able to find the evidence is insufficient to justify the verdict as a matter of law. SDC 1960 Supp. 33.1605 (6). As this court concluded in a similar recent case:

> "There are no accurate means of monetarily evaluating the detriment caused plaintiff by her pain, suffering and discomfort. Of necessity the

amount of damages to be awarded therefor is largely left to the good judgment of the jury. Larum v. Butler, 42 S.D. 30, 172 N.W. 778. And when courts scrutinize the exercise of that judgment they must keep in mind the reduced value of our dollar. In passing on the question of whether such award is legally excessive the trial judge exercises a judicial discretion. Because of his participation in the trial he is in a better position than are we to make this determination. For this reason the Tufty case admonishes us to act with reluctance in disturbing an award approved by the trial judge. When this award is viewed in the light of applicable principles we are unable to say that the trial court abused its discretion in holding the verdict not excessive." Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147, 153.

Affirmed.

All the Judges concur.