2003 SD 149

**U.S. BANK NATIONAL ASSOCIATION, f/k/a First Bank of South Dakota, N.A., successor in interest by merger to Western Bank, Plaintiff and Appellee,**

v.

**Michael L. SCOTT and Linda L. Scott, Defendants and Appellants.**

No. 22498.

Supreme Court of South Dakota.

Argued March 24, 2003.

Decided Dec. 23, 2003.

James E. Moore and Daniel J. Harmelink of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Gale Fisher, Sioux Falls, South Dakota, Attorney for defendants and appellants.

ENG, Circuit Judge.

[¶ 1.] U.S. Bank National Association (Bank) alleged that on August 21, 1985,

Bank's predecessor in interest, Western Bank, loaned Michael L. Scott and Linda L. Scott (Scotts) $200,000 as represented by a promissory note (note) in that principal amount. The note was subsequently modified through three allonges. Bank contends that when the note matured Scotts owed $109,948.79, plus interest. As an affirmative defense Scotts asserted that the note was paid in full. Neither the Bank nor Scotts had complete records of payments made. As a result, a determining factor below was which party bore the burden of establishing the balance due on the note. Bank moved for summary judgment and the trial court granted summary judgment after determining Scotts had not met their burden of establishing that genuine issues of material fact concerning payment remain for trial. Scotts appeal from the judgment.

## FACTS AND PROCEDURE

[¶ 2.] On August 21, 1985, Bank issued a commercial loan to Scotts in the principal amount of $200,000 to finance Scotts' opening and operation of a Mexican style restaurant in Sioux Falls, El Pollo Asado. As consideration for the loan Scotts delivered a promissory note to Bank in the principal amount of $200,000. The terms of the note required monthly payments of $2,950 beginning on November 21, 1985.

[¶ 3.] Two months later Scotts requested an additional $20,000 loan to cover cost overruns for improvements made to the restaurant facility. Bank extended the additional amount and the parties executed an allonge for attachment to the note dated October 31, 1985. The allonge increased the principal amount of the note to $220,000 with monthly payments of $3,240

and the payments were to commence on November 21, 1985. The Small Business Administration (SBA) also agreed to guaranty ninety percent of Scotts' loan.

[¶ 4.] From the outset Scotts struggled to operate El Pollo Asado at a profit. In the first year of operation Scotts missed two loan payments—June and July 1986. To remedy a default under the terms of the note caused by these missed payments Scotts and Bank entered into an extension agreement on August 11, 1986.[1] That extension agreement deferred the payments due in June and July 1986 and re-set the maturity date of the note to August 21, 1995.[2]

[¶ 5.] In either May or early June 1987, Scotts liquidated several pieces of excess restaurant equipment for a sum of $38,800 and applied the proceeds to the outstanding principal and interest due on the note. The only documentation of this $38,800 payment by Bank or Scotts is a letter from Bank to SBA dated June 18, 1987, which states the $38,800 payment brought the loan "current to date for principal and interest." Thereafter, Scotts missed two additional payments in June and July 1987. Bank and Scotts entered into a second allonge for attachment to note on July 20, 1987, which deferred payment on the June and July 1987 installments and lowered the interest rate on the note.

[¶ 6.] Scotts ultimately closed the restaurant in June 1988. Shortly thereafter, Scotts submitted an offer in compromise to Bank and SBA in which they proposed new repayment terms on the note. The offer acknowledged that the remaining principle balance was $185,000 as of September 16, 1988, and proposed a lump-sum

---

1. The extension agreement recited the note's balance at $214,336.27 as of August 11, 1986.

2. About this time Scotts made changes to their restaurant in an attempt to stimulate business by altering their menu and changing the name of their establishment to Fajitas.

payment of $125,000 in full satisfaction of this balance. Bank and SBA declined the offer.

[¶ 7.] In October 1988, Scotts again approached Bank concerning repayment of the note and requested Bank lower the interest rate. Bank agreed and the parties entered into a third allonge for attachment to note. The third allonge decreased the interest rate and lowered the monthly payment to $2,270 effective on October 15, 1988.

[¶ 8.] The note ultimately matured on August 21, 1995, with an unpaid balance of $109,948.79 according to Bank's records. Bank notified Scotts of this outstanding balance. On September 12, 1995, Scotts met with Bank to discuss ways in which they could repay the outstanding debt. Subsequently, Mike Scott wrote a letter to Bank stating:

> After my meeting with you on Tuesday September 12, 1995, I went to my local bank in Yankton and discussed with them borrowing the money to pay off your bank. They were not interested in making a loan on a business that was not in operation.
>
> I have no way of coming up with $110,000 to pay off the loan. Equipment that is 10 years old will in no way cover this loan.

[¶ 9.] The letter also requested that Bank extend the maturity date of the note until 2005 in order to enable Scotts to pay the remaining $110,000 due.

[¶ 10.] It appearing to Bank Scotts might be unable to make repayment in full, on November 30, 1995, Bank asked SBA to pay off the guaranteed portion. However, SBA indicated a reluctance to do so because Bank's records of payments on the note were incomplete. In December 1997, SBA terminated its guaranty on the note due to the failure of Bank and Scotts to come to an agreement regarding the outstanding balance.

[¶ 11.] On November 16, 1998, Bank commenced the present action to collect on the note by service of a summons and complaint. In their answer, Scotts did not deny the validity or the authenticity of the signatures on the note but, instead, contended that the note was paid in full.

[¶ 12.] Because of this asserted defense Bank requested a number of documents from Scotts concerning payment on the note. By October 2000 Scotts failed to produce the requested documents and Bank filed a motion to compel. Apparently, Scotts still failed to produce many of these documents. As a result, on January 25, 2001, the trial court entered an order prohibiting Scotts from introducing at trial any documents responsive to any of Bank's requests for production of documents which were not produced on or before November 30, 2000.

[¶ 13.] In April 2002, Bank moved for summary judgment. Scotts responded with the affidavit of Michael Scott. In his affidavit, Scott claimed the note had been paid in full and offered the amortization schedule prepared by Kyle Repp, the Scotts' accountant, in support of this contention. Scotts then asked Repp to formulate an amortization schedule showing the note had been paid in full. This amortization schedule was based on assorted tax returns, but was not supported by any bank statements or cancelled checks showing payments that had been made. The circuit court determined Scotts had the burden of demonstrating payment on the note as a matter of law and Scotts failed to present admissible evidence of payment beyond those payments already acknowledged by Bank. Therefore, the circuit court granted summary judgment to Bank.

Scotts appeal.[3]

## STANDARD OF REVIEW

[¶ 14.] The standard under which we review summary judgment is well established:

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, the party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.

*Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459.

[¶ 15.] This Court reviews the evidentiary rulings of the trial court under an abuse of discretion standard. "Evidentiary rulings made by a trial court are presumed to be correct and are reversed only if there is an abuse of discretion." *In re Dokken*, 2000 SD 9, ¶ 39, 604 N.W.2d 487, 498.

## ANALYSIS

### ISSUE ONE

[¶ 16.] **Whether Article 3 of the Uniform Commercial Code and the burden shifting framework of SDCL 57A–3–308 govern this case.**

[¶ 17.] Since the note is a negotiable instrument, Bank's action to collect is governed by SDCL 57A–3–308. That statute provides in relevant part:

a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings....

b) If the validity of signatures is admitted or proved and there is compliance with subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under § 57A–3–301,[4] unless the defendant proves a defense or claim in recoupment....

[¶ 18.] The burden shifting framework subsequently adopted by the legislature in SDCL 57A–3–308 was addressed by this Court in *Frank Stinson Chevrolet, Inc. v. Connelly*, 356 N.W.2d 480, 482–83 (S.D.1984). Therein, the Court stated:

Proof of the instrument of indebtedness in the hands of the party seeking pay-

---

3. On July 31, 2002, Scotts filed a motion for relief from judgment with the circuit court. In support of that motion Michael Scott submitted a second affidavit. This affidavit, notably in marked contrast to the first, admitted that the note had not been paid in full as previously asserted and claimed that newly discovered evidence indicated that a balance of $65,523.12 was due on the note. The cir-

cuit court denied Scotts' motion for relief from the judgment. Scotts have not appealed from this ruling.

4. SDCL 57A–3–301 states that a person entitled to enforce an instrument includes the holder of the instrument. Therefore, Bank, as the holder of the instrument, is entitled to enforce the note.

ment creates a presumption of indebtedness and places the burden of proving payment on the party seeking to rely on payment.

*Id.* (citing *Bensinger v. West,* 255 S.W.2d 29 (Ky.Ct.App. 1953); *Guerin v. Cassidy,* 38 N.J.Super. 454, 119 A.2d 780 (1955); *Mann v. Whitely,* 36 N.M. 1, 6 P.2d 468 (1931); *Naylor v. Gutteridge,* 430 S.W.2d 726 (Tex.Civ.App.1968)).

[¶ 19.] SDCL 57A–3–308 creates a three part burden shifting framework applicable to actions to collect on an instrument. First, the plaintiff must make a prima facie showing that it is entitled to payment on the instrument. If such a showing is made, the burden shifts to the defendant to establish a defense to the plaintiff's claim such as fraud, lack of consideration, payment, etc. Finally, if a defense is established, the plaintiff must then prove that it is a holder in due course entitled to overcome the defense. *See* 6 Hawkland & Lawrence UCC Service, [Rev] § 3–308:3; *see also Hovendick v. Presidential Financial Corp.,* 230 Ga.App. 502, 497 S.E.2d 269, 272–73 (1998).

[¶ 20.] In the instant case, Bank has made its prima facie showing that it is entitled to payment on the instrument. Bank made this prima facie showing by setting forth in its complaint that Scotts had failed to pay all of the indebtedness owed to Bank and filing the note plus the three allonges for attachment as well as the extension agreement. In its original complaint, filed November 17, 1998, Bank asserted that Scotts remained indebted to Bank in the principal amount of $109,948.79, plus interest in the amount of $38,208.70 as of November 4, 1998, with interest accruing thereafter at the rate of $31.63 per day. Bank is not seeking to recover the face value of the note and attachments. Instead, Bank recognizes that Scotts are entitled to certain credited amounts for payments made. When a defendant is entitled to credits on the amount owing, a plaintiff must act with honesty of purpose to set forth the amount of debt actually remaining on the note, rather than taking unconscionable advantage of the defendant by seeking to recover the face value of the note.[5]

[¶ 21.] "When the signatures are admitted or established, production of the instrument entitles a holder to recover on it *unless* the defendant establishes a defense." *Strickland v. Coleman,* 824 S.W.2d 188, 192 (Tex.App.1991); *Cadle Co. v. Bankston & Lobingier,* 868 S.W.2d 918, 921 (Tex.App.1994). (emphasis added). As a result, the burden of proof shifted to Scotts to prove the affirmative defense of payment. Failure on the part of Scotts to plead and prove payment would entitle Bank to recover the amount set forth in its pleadings. Here, Bank produced the note and attachments and Scotts did not deny

5. In fact, such honesty of purpose is consistent with SDCL 15–6–11(a), which provides in part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion and exhibits or attachments thereto, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is *well grounded in fact and is warranted by existing law* or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass, embarrass another party or person, or to cause unnecessary delay or needless increase in the cost of litigation. (emphasis added).

Therefore, in reciting the amount owed on a note it is the duty of the party certifying the pleadings to set forth only such amount as is well grounded in fact and warranted by existing law. When the amount due is less than the face value on the note a plaintiff is required to set forth in the pleadings the actual amount due on the note.

the validity of the documents or their signatures on the documents.[6] Therefore, Bank is entitled to recover unless Scotts establish genuine issues of material fact concerning payment.

## ISSUE TWO

[¶ 22.] **Whether Scotts met their burden of establishing a genuine issue of material fact concerning payment.**

[¶ 23.] The moving party will be entitled to judgment as a matter of law when the nonmoving party has failed to "make a sufficient showing for an essential element of [their] case with respect to which [they] have the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The defense of payment is an essential element of the Scotts' case. Scotts can avoid summary judgment if they can prove that payment was made and that a genuine issue of material fact remained for trial. Scotts have asserted the affirmative defense of payment in three ways. First, they set forth the affirmative defense of payment as a general allegation in their answer. In addressing a similar situation, the court in *Rea v. Sunbelt Sav.,* 822 S.W.2d 370, 373 (Tex.App.Dallas 1991), held that such general allegations of payment are insufficient to overcome a summary judgment motion. The court noted:

> Rea's plea of payment in general language that does not specify the nature of the alleged payments, if any, or the several items thereof, is a pure conclusion. (*citation omitted*). The plea should have specified what credits and offsets Rea relied on in asserting payment.

*Rea,* 822 S.W.2d at 373. Therefore, though preserving the defense, the general allegation of payment as set forth in Scotts' answer was insufficient to meet the burden of establishing that a genuine issue of material fact remained for trial.

[¶ 24.] Scotts' second assertion of payment was made in Michael Scott's affidavit opposing summary judgment. However, this affidavit fails to set forth specific facts of payment and merely recites conclusory allegations of payment. Under SDCL 15–6–56(e) the opposing party must be diligent in resisting a motion for summary judgment, and mere allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment. *Hughes–Johnson Co., Inc. v. Dakota Midland Hosp.,* 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972). Scott's affidavit is simply insufficient to establish the affirmative defense of payment.

[¶ 25.] Finally, Scotts submitted an amortization schedule prepared by their accountant, Repp. However, there is a dispute concerning whether this amortization schedule was admissible evidence. Assuming the amortization schedule is admissible then it could establish both the affirmative defense of payment and that a genuine issue exists for trial. We therefore address the admissibility of that amortization schedule.

*A.    Whether the amortization schedule is admissible as a summary of lost or destroyed documents pursuant to SDCL 19–18–4.*

[¶ 26.] Repp created the amortization schedule from income tax returns

---

6. We note that prior to SBA's refusal to pay the note Scotts admitted liability on the remaining balance on two previous occasions. First, on September 16, 1988, Scotts submitted to Bank an offer in compromise in which Scotts admitted a remaining balance of $185,000 on the loan. At that time Scotts offered Bank $125,000 in full settlement of the loan but Bank refused the offer. Second, on September 14, 1995, a letter was written by Scotts in which they admitted a loan balance of $110,000.

that purportedly no longer exist. We therefore address whether a summary of nonexistent documents is admissible when created from documents that no longer exist. The trial court stated in its order that:

> Both parties argue that *Hotovec v. Howe*, 79 S.D. 337, 111 N.W.2d 748 (1961) gives them the right to submit summary evidence. *Hotovec* does allow summaries, but the underlying evidence of the summary must be available for inspection. The rule is stated in Vol. IV, *Wigmore on Evidence*, 3rd ed § 1230, p 434 as follows:
>
> > Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous detailed statements*-as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank ledger it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.
> >
> > Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available.

*Wigmore on Evidence, supra* at 434 (quoting *Hotovec v. Howe*, 79 S.D. 337, 340, 111 N.W.2d 748, 749–750 (1961)).

[¶ 27.] These requirements are reflected in SDCL 19–18–6 which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

[¶ 28.] The Repp amortization schedule is defective for two reasons. First, the amortization was not created for the convenience of the court because there were voluminous writings; rather, the amortization was created because the writings were unavailable. Second, pursuant to SDCL 19–18–6, the original documents used in creating the summary must be made available to the other party. Because the documents were purportedly not readily available we turn to SDCL 19–18–4 which addresses admissibility when the documents are unavailable:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> > (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
> >
> > (2) No original can be obtained by any available judicial process or procedure.

[¶ 29.] Pursuant to SDCL 19–18–4 Scotts, as proponents of the secondary evidence, have the burden of establishing loss or destruction of an original. *Sellmayer Packing Co. v. Commissioner of Internal Revenue*, 146 F.2d 707, 710 (4th

Cir.1944). Furthermore, the proponent may be required to demonstrate some degree of diligence in the search for an allegedly lost or destroyed original in order to meet this burden. Therefore, the proponent of the evidence must show that a reasonable and diligent search has been made for the original without success. *Sylvania Elec. Products, Inc. v. Flanagan,* 352 F.2d 1005, 1008 (1st Cir.1965). This was not established in the record below.

[¶ 30.] The record reveals that after the trial court granted Bank's summary judgment motion Scotts came forward with several of the original documents that would have helped in preparation of a summary. This demonstrates that Scotts' documents were not lost or destroyed but, rather, Scotts were not diligent in their efforts to discover the documents. Therefore, Scotts have failed to meet their burden of proving loss or destruction of the original documents and the amortization is not admissible as a summary.[7]

B. *Whether Scotts established a foundation for their amortization so as to make it admissible evidence.*

[¶ 31.] Scotts had a duty to establish an evidentiary foundation for the summary. The admission of a summary

under FedREvid 1006 [SDCL 19–18–6] requires "a proper foundation as to the admissibility of the material that is summarized and ... [a showing] that the summary is accurate; however, the decision to admit or exclude the summary rests in the district court's sound discretion." *Needham v. White Laboratories, Inc.,* 639 F.2d 394, 403 (7th Cir.1981) *(cert. denied)* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981); *U.S. v. Driver,* 798 F.2d 248, 252–253 (7th Cir.1986). Scotts have not made a showing as to the admissibility of the underlying documents.[8] Without a proper evidentiary foundation the trial court properly excluded this evidence.

C. *Whether the amortization is admissible as a summary pursuant to SDCL 19–18–6.*

[¶ 32.] Regardless of the trial court's refusal to admit this amortization because the underlying documents were unavailable, the fact remains that this amortization was not a summary[9] and, therefore, was inadmissible unless it qualified as another type of admissible evidence.

[¶ 33.] The amortization was not a summary of documents but rather a conclusion Repp reached based on his calculations and assumptions from the Scotts'

---

7. Bank submitted an amortization schedule showing the balance due on the note but unlike Scott' amortization schedule, Bank's amortization schedule was admissible. Bank's amortization schedule was admissible because although the underlying documents were unavailable Bank proved that those documents were destroyed. As a result, the trial court could rely on Bank's amortization schedule to establish Bank's prima facie case. It was reasonable for the trial court to rely on Bank's balance due because Scotts had admitted to the balance due on at least two occasions and these admissions supported the amortization schedule set forth by Bank.

8. The only attempt Scotts made to establish a foundation was filing the deposition of Repp. However, the deposition did not establish the admissibility of the underlying documents.

9. The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court. SDCL 19–18–6.

income tax returns.[10] "Since only 'writings, recordings, or photographs' may be the subject of a FedREvid Rule 1006 summary, *such a summary cannot properly incorporate a witness' personal knowledge as the basis for any of the matters summarized.*" (emphasis added) (citing 5 Weinstein and Berger, *Weinstein's Evidence*, 1006–8 to 1006–9 (1984); *White Industries, Inc. v. Cessna Aircraft Co.*, 611 F.Supp. 1049, 1070 (W.D.Mo.1985)). Repp's personal opinions, presumptions, and unfounded conclusions are not admissible under SDCL 19–18–6 [11] because they do more than summarize the writings. They go beyond the scope of SDCL 19–18–6 and state the opinion of Repp. In order to be admissible under SDCL 19–18–6, summary evidence must "accurately reflect the underlying documents." 6 Weinstein and Berger, *Weinstein's Federal Evidence,* § 1006.07[1] (Joseph M. McLaughlin ed, 2d ed 1998); *Needham,* 639 F.2d at 403.

### D. Whether the amortization is admissible as an expert opinion.

■ [¶ 34.] Finally, the amortization might be admissible if it qualifies as an expert opinion. SDCL 19–15–2 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Scotts have absolutely failed to prove that the Repp amortization is expert opinion, therefore, the amortization is not admissible as an expert opinion.

[¶ 35.] Scotts have altogether failed to meet their burden. They have neither set forth an allegation of loss or destruction of the original documents nor have they shown any degree of diligence in the search for the original documents. Without such a showing, Scotts cannot rely on the exception for lost or destroyed documents. Scotts have also failed to establish any other basis for the admissibility of the amortization schedule.

[¶ 36.] As a result, the trial court did not abuse its discretion in making its evidentiary ruling that the amortization schedule was inadmissible. The trial court's evidentiary ruling is affirmed.

### ISSUE THREE

[¶ 37.] **Whether Scotts met their burden of establishing that a genuine issue of material fact remains for trial.**

■ [¶ 38.] Once a movant for summary judgment has properly supported its motion, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." SDCL 15–6–56(e). Proving the affirmative defense of payment serves as its most fundamental purpose to offset the debt owed. However, such a showing will not necessarily result in a genuine issue remaining for trial. SDCL 15–6–56(e) requires:

> Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit

**10.** Had this been a summary then it would have contained a summarization of the information contained in the tax returns rather than a conclusory assertion that because the tax returns contained certain figures, pay-

ments had necessarily been made on presumptive dates and in presumptive amounts.

**11.** The South Dakota equivalent of FedREvid Rule 1006.

shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him. (emphasis added).

[¶ 39.] Pursuant to SDCL 15–6–56(e) Scotts may not rely on mere conclusory statements to meet their burden of proving that a genuine issue remains for trial. This Court has held that summary judgment is proper when the party opposing provides only conclusory statements and fails to present specific facts showing that a genuine issue exists for trial. *Casazza v. State,* 2000 SD 120, ¶ 16, 616 N.W.2d 872, 876; SDCL 15–6–56(e). The nonmoving party may not rely on mere denials or allegations in its pleadings but must designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (U.S. Dist.Col.1986); *Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 258 (C.A.8 Mo.1996). Scotts failed to demonstrate that this amortization schedule is anything other than a conclusory statement. As a result, their affirmative defense of payment was unsupported by any specific facts below to defeat summary judgment.

## CONCLUSION

[¶ 40.] The burden rests with the Bank to make a prima facie showing of

entitlement to payment on the instrument. Bank met its burden by establishing:

1) that it is the holder of the instrument;

2) the validity of Scotts' signatures; and,

3) that it acted with honesty of purpose in setting forth the amount of debt actually remaining on the note.

Bank was entitled to summary judgment unless Scotts made a showing that a genuine issue of material fact remained for trial. Scotts had the burden to establish any genuine issues of material fact supporting their affirmative defense of payment. They did not meet that burden and as a result we find that summary judgment was properly granted.

## APPELLATE ATTORNEY FEES

[¶ 41.] Bank filed a motion for appellate attorney fees pursuant to SDCL 15–17–38 and SDCL 54–3–13. The Bank "may recover reasonable attorney's fees in the case of default of payment if it is provided for in the note, bond, mortgage or other evidence of debt." SDCL 54–3–13. Bank's note does provide for the awarding of attorney's fees but, because of the unique nature of this case, the Court declines to award attorney's fees as the statute is permissive and not mandatory.

[¶ 42.] For the foregoing reasons, we affirm the circuit court's grant of summary judgment.

[¶ 43.] KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 44.] GILBERTSON, Chief Justice, and ZINTER, Justice, dissent.

[¶ 45.] ENG, Circuit Judge, for SABERS, Justice, disqualified.

GILBERTSON, Chief Justice (dissenting).

[¶ 46.] I respectfully dissent for three main reasons: the Bank did not meet its burden of showing the absence of material fact; the Scotts' response to the Bank's motion for summary judgment was sufficient; and the Court's detailed evidentiary analysis is unnecessary.

[¶ 47.] The controversy before the Court presents a classic example of a situation in which summary judgment is improper. As the Court correctly recites, in reviewing grants or denials of motions for summary judgment "[w]e will affirm only when there are no genuine issues of material fact and ... [a]ll reasonable inferences drawn from the facts must be viewed in favor of the non-moving party." *Mueller v. Cedar Shore Resort, Inc.*, 2002 SD 38, ¶ 10, 643 N.W.2d 56, 61 (citation omitted). In this case, the basic question is factual: what is the balance due on the promissory note? The Scotts' contend that they have made sufficient payments to discharge their obligation on the note, and as we have previously noted "[s]ummary judgment is also improper where defendant's defenses involve questions of fact." *Limpert v. Bail*, 447 N.W.2d 48, 50 (S.D.1989).

[¶ 48.] In large part, the Court's decision rests upon its analysis of which party bore the burden of establishing the amount due on the note. After concluding that SDCL 57A–3–308 shifted the burden of proof to the Scotts', the Court holds that the Scott's have failed to carry this burden. The presumption under SDCL 57A–3–308, however, is a *trial* presumption. Here, we are dealing with a summary judgment proceeding. Thus, the Bank as the moving party bore the burden of "clearly show[ing] an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Mueller*, 2002 SD 38, ¶ 10, 643 N.W.2d 56; *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility ... [to] demonstrate the absence of a genuine issue of material fact.").

[¶ 49.] In support of its motion for summary judgment, the Bank offered the promissory note along with three allonges and the extension agreement. Notwithstanding the burden shifting framework of SDCL 57A–3–308, the Bank's offer of proof simply does not establish the absence of material fact. As the Court recognizes, the Scotts' do not deny the validity of the note but, instead, dispute the amount owing on the note. Although at trial SDCL 57A–3–308 would require the Scotts' to prove the affirmative defense of payment, during the summary judgment stage, the burden rests squarely on the Bank to show that no factual issues regarding payment exist. Therefore, at the summary judgment hearing, the Bank had the burden to present at least some evidence detailing payment on the note, and, given the fact the Bank admitted it did not have complete records concerning payment, the Bank clearly cannot carry this burden.[12]

[¶ 50.] I acknowledge that defendants do not bear the primary burden on summary judgment but that they are required to "be diligent in resisting the motion, and mere allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459 (citations

---

**12.** The Bank's predecessor in interest apparently destroyed most of the documents detailing the payment history of the note.

omitted). Thus, the Scotts' could not rely on mere conclusory statements nor could they rest solely on allegations in their pleadings. SDCL 15-6-56(e); *Casazza v. State*, 2000 SD 120, ¶ 16, 616 N.W.2d 872, 876; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

[¶ 51.] Here, the Scotts' response was sufficient to resist the Bank's motion for summary judgment. In addition to Michael Scott's affidavit disputing the amount due on the note, the Scotts' relied on the deposition of Kyle Repp, a Certified Public Accountant. In his deposition, Repp testified he prepared an amortization schedule in June 1996, and he believed the loan in question had been repaid in full. Although the Scotts' clearly could not rely upon their pleadings alone, Michael Scott's affidavit, taken in concert with Repp's professional opinion in his deposition, sufficiently supports the Scotts' defense of payment. *Chem-Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 18, 652 N.W.2d 756, 765 ("In sum, those resisting summary judgment must show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof."). While it is true that the Scotts' assertions regarding the amount owing on the note may have been inconsistent,[13] "[s]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion...." *St. Onge Livestock Company, Ltd., v. Curtis*, 2002 SD 102, ¶ 25, 650 N.W.2d 537, 544 (citations omitted).

[¶ 52.] Finally, the Court unnecessarily delves into a detailed evidentiary analysis of the amortization schedule prepared by Repp. This analysis is solely occasioned by the Court's mistaken conclusion that the Scott's bore the primary burden on the summary judgment proceeding because of the SDCL 57A-3-308 framework. As noted above, this statute does not relieve the Bank of its burden on summary judgment to prove the absence of material fact. Because the Bank has not met this burden, any detailed analysis of the Scotts' evidence is misplaced.[14]

ZINTER, Justice (dissenting).

[¶ 53.] I join the dissent of Chief Justice Gilbertson. I also write specially to emphasize the material disputes of fact that exist in this case and to express my belief that the Court has misinterpreted and incorrectly applied SDCL 19-18-6 (Fed R Evid 1006) governing summaries.

**Material Issues of Disputed Fact**

[¶ 54.] One need not read more than the opening passage of the Bank's own brief to resolve this appeal. In that passage, the Bank unequivocally demonstrates the existence of material issues of disputed fact on Scotts' affirmative defense of payment. The Bank's Statement of the Facts expressly concedes the point stating that:

> This case involves a dispute over the amount of principal due on a promissory note delivered to the Bank by the Scotts in August of 1985. The Bank contended that at maturity the Scotts owed $109,948.79 plus interest on the note, while the Scotts asserted that the note

---

**13.** The Scotts initially claimed they had paid the promissory note in full. After the summary judgment hearing, the Scotts filed a motion for relief from judgment and attempted to come forward with new evidence showing they actually owed $65,523.12 on the note.

**14.** I also disagree with some portions of that analysis; however, because I believe the analysis is unwarranted, I decline to address this issue.

was paid in full. This seemingly straightforward matter is complicated because neither the Scotts nor the Bank have complete records of payments made on the note.

Considering this statement alone, we should reverse the summary judgment. Never before has this Court permitted summary judgment in such circumstances: especially not when the trial court had to make credibility determinations about disputed factual assumptions underlying each side's payment records (described by both parties as amortization schedules).

[¶ 55.] The trial court concluded that Bank was entitled to summary judgment because it found that the Scotts' amortization contained "obvious glaring errors." On the other hand, the trial court apparently found the Bank's amortization credible despite missing records and alleged errors. This Court compounds the problem by further finding that "[i]t was *reasonable* for the trial court to rely on the Bank's balance. . . ." *See supra* note 7 (emphasis added). In my view, this type of fact finding, expressly finding the reasonableness of disputed evidence, has no place in summary judgment proceedings.

[¶ 56.] The Court, therefore, attempts to distinguish our precedent prohibiting fact finding in summary judgment proceedings by noting that this case involves payment, which is an affirmative defense. However, the Court's error is illustrated by Wright, Miller and Kane's discussion of summary judgment in cases involving defenses. That treatise recognizes that even though a motion for summary judgment may be used to test the sufficiency of a defendant's defense:

A [plaintiff] is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient. Since a single valid defense may defeat recovery, however, [plaintiff's] motion for summary judgment should be denied when *any defense* presents *significant fact issues* that should be tried.

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2734 (3d ed 1998) (emphasis added). Accordingly, if a fact issue existed on the payment defense, summary judgment should have been denied, and the trial court's resolution of the payment dispute should have been determined at a trial. Simply stated, the Scotts' *ultimate trial burden of persuasion* under SDCL 57A–3–308 is irrelevant. It is irrelevant because the only question on the motion for summary judgment is whether any material dispute of fact exists on the payment defense.

[¶ 57.] Additionally, even if a fact resolution of the payment dispute were permitted in summary judgment proceedings, the Bank's own showing does not affirmatively demonstrate its entitlement to relief. It does not because the Bank's own amortization schedule is subject to the same infirmities the Court uses to invalidate the Scotts' amortization schedule. Specifically, this Court disallows consideration of Scotts' amortization because of their inability to produce the records [15] used to construct their schedule. However, Bank concedes that it also lost underlying documentation supporting the outstanding principal claimed on its schedule. Indeed, in its Statement of Material Facts filed in support of its motion, the Bank expressly concedes that "[a]pparently, the records of any payments that had been made prior to the execution of the Third Allonge in Octo-

---

**15.** Repp testified at his deposition that the underlying tax records were destroyed pursuant to his accounting office's old records policy.

ber of 1988 had been destroyed when Western Bank merged into First Bank in the late 1980s."

[¶ 58.] Moreover, the Bank's other supporting submissions demonstrate that its claim to $109,948.79 in principal is inconsistent and uncertain. The Bank's claim is inconsistent because it is based upon two affidavits of Michael J. Porcello, a Bank Vice President. However, the claims made in those affidavits are inconsistent. In his first affidavit, Porcello claimed entitlement to $109,948.79. However, in his second affidavit, he attached a Bank amortization schedule, purportedly prepared from Bank records, claiming $111,258.61. Nevertheless, the trial court found for the Bank in the amount of $109,948.79.

[¶ 59.] The Bank also concedes that there is record evidence that its claim is uncertain. The Bank admitted that "[t]he SBA was reluctant to pay on its guaranty because the Bank was missing certain records relating to the Note." On July 17, 1996, the SBA notified the Bank that it planned to "delay any purchase until an agreement is reached as to the amount owing on th[e] account that can be legally proved." However, "[t]he SBA ultimately declined to honor its guaranty on the Note, in part because of the wide variance between the Bank's and the Scotts' amortization schedules." The SBA terminated its guaranty entirely in December, 1997, "due to the Bank's and the Scotts' failure to come to an agreement regarding the Note's outstanding balance."

[¶ 60.] These deficiencies in the Bank's own showing more than adequately demonstrate that the Bank failed to establish the absence of disputed issues of material fact and its right to $109,948.79 plus interest. The inconsistencies and uncertainties in the Bank's own records certainly refute this Court's appellate finding that "[t]he note ultimately matured on August 21, 1995, with an unpaid balance of $109,948.79

according to Bank's records." *See supra* ¶ 8 (emphasis added).

[¶ 61.] It must finally be noted that the deficiencies in the Bank's own showing are not the only evidence raising disputes of material fact. The Scotts raised other alleged errors in the Bank's amortization schedule, including: (1) an alleged failure to give proper credit for a $38,000 equipment sale; (2) an alleged failure to credit any portion of the 1989 payments to principal reduction; and, (3) a Bank letter indicating the loan was current. Although the Bank has submitted "explanations" for these points, the Bank's explanations *and* the Scotts' assertions should both be resolved by a fact finder rather than by concluding that they raise no dispute of fact.

### Summaries

[¶ 62.] I also dissent because I disagree with the Court's evidentiary analysis of summaries. The summary at issue was Scotts' amortization schedule, which was prepared by their certified public accountant, Kyle Repp. Although the Court correctly observes that this schedule could establish the defense of payment and create a dispute of material fact, *see supra* ¶ 25, the court incorrectly excludes the schedule from consideration. It does so because the Court concludes that it is a "summary" that is inadmissible under SDCL 19–18–6, Fed R Evid 1006. The Court concludes it inadmissible because the documents from which the "summary" was created no longer exist. The Court reasons that: (1) Scotts failed to establish their burden of proving the loss or destruction of records supporting such "secondary evidence," and (2) Scotts failed to establish a foundation for it. *See supra* ¶¶ 26–31.

[¶ 63.] I dissent from the Court's analysis because the amortization was not a summary; i.e. *secondary evidence* of the underlying documents. On the contrary,

the Court concedes that "this amortization was not a summary" within the meaning of Rule 1006. *See supra* ¶¶ 32–33.

[¶ 64.] Summaries are admissible under Rule 1006 because "[t]he *contents* of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." SDCL 19–18–6 (Rule 1006) (emphasis added). However, the Scotts did not offer their amortization schedule to prove the *contents* of the underlying records used to arrive at the amortization. The amortization was simply used to illustrate Repp's reconstruction of the payments made in his deposition. Moreover, Repp's amortization was the same kind of opinion that the Bank submitted through its amortization (which was also constructed despite lost or destroyed records).

[¶ 65.] These types of expert opinions are not covered by Rule 1006. "[N]ot all expert testimony that is seemingly summary in form falls within the parameters of Rule 1006. Opinion evidence, even if based upon review of voluminous data, remains opinion evidence ... and it need not satisfy Rule 1006." 2 Gregory P. Joseph Stephen A. Salzburg, Evidence in America: The Federal Rules In the States, ch 70, 3 (1987). Therefore, the Court incorrectly analyzes the admissibility of Repp's opinion under Rule 1006. Because the Scotts' amortization was not offered as a summary (secondary evidence) of the underlying records, and because it was simply an opinion of the Scotts' certified public accountant, it was not excluded from consideration by Rule 1006.

### Opinion Evidence

[¶ 66.] The Court finally errors by concluding that Repp's deposition testimony fails to qualify for consideration as expert opinion under SDCL 19–15–2 (Fed R Evid 702). First, the court's conclusion is not supported by any analysis. *See supra* 34. More importantly, SDCL 19–15–3 (Fed R Evid 703) only requires that such expert opinions be based upon "facts or data ... perceived or made known [to the expert] at or before the hearing." Moreover, if the underlying records are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." *Id.*

[¶ 67.] Here, the Scott's certified public accountant of over twenty years constructed the amortization from the Scotts' year-end bank records, income tax returns and IRS 1099s. Significantly, Bank does not, nor could it claim that accountants do not reasonably and customarily rely upon such records for such purposes. Under those circumstances, Scotts' amortization was just as usable for summary judgment purposes as the Bank's amortization.[16] Both amortizations were opinion evidence based upon each party's different factual assumptions. The difference in factual assumptions clearly raised a disputed issue of material fact concerning the calculation of principal remaining due on the note.

[¶ 68.] For these reasons, summary judgment was incorrectly entered. The disputes concerning the amount of principal due on the note should be determined at a trial.

[¶ 69.] GILBERTSON, Chief Justice, joins Justice Zinter's dissent.

---

**16.** Although Repp did not have current access to all of the underlying records, neither did the Bank.